Minta Green Spencer *et al.* Appellees, *vs.* Gertrude B. Razor *et al.* Appellants.

*Opinion filed October 25, 1911.*

1. Evidence—*attorney may testify as to matters coming to his knowledge as a scrivener and notary.* The fact that the person who drew a deed and took the acknowledgment was the attorney for the grantor does not preclude his testifying to matters which came to his knowledge as a scrivener, attesting witness and notary public, there being no disclosure of any matters coming to his knowledge as an attorney.

2. Same—*clear proof is required to overcome the certificate of acknowledgment.* The certificate of acknowledgment is *prima facie* proof of the execution of the deed, and clear and satisfactory evidence is required to overcome the force and effect of such certificate as evidence that the grantor executed the deed.

3. Deeds—*when deeds must be regarded as delivered.* Testimony of a competent witness that certain deeds were delivered to the grantees immediately after their execution is sufficient, when coupled with the facts that the deeds were voluntary conveyances and that some of the grantees were minors, to overcome any presumption of non-delivery arising from the facts that the deeds, after being recorded, were in the possession of the grantor's attorneys and were found in his safety deposit box after his death, up to which time he had exercised dominion over the property.

4. Same—*the grantor's consent to recording of deed is not essential.* Unless there is an agreement not to record the deed the grantor's consent is not essential to authorize the grantee to record it, and the fact that the deed is filed for record raises a presumption that it was delivered by the grantor to the grantee, and that it was rightfully filed for record by the grantee or by some one acting for him and in his behalf.

5. Same—*consideration not necessary to render voluntary conveyance binding.* No valuable consideration is required to render effective and binding upon the grantor voluntary conveyances to his children and grandchildren.

6. Same—*bringing suit for partition under deeds shows acceptance of deeds.* Acceptance is presumed in the case of voluntary conveyances beneficial to the grantees; but the fact that the grantees brought a partition suit, claiming under their deeds, is direct evidence of acceptance.

7. Same—*when a deed is not testamentary in character.* It is only when a deed is not delivered by the grantor in his lifetime

that it can. be said to be testamentary in character, and the facts that a life estate is reserved to the grantor, or that, without such reservation, he is permitted to retain control of the premises and receive the profits during his lifetime, and that the deeds are found in his possession after his death, do not render the deed testamentary in character.

8. SAME—*a deed cannot be repudiated after delivery.* After a deed has been executed and delivered it is not within the power of the grantor to repudiate it merely by bringing suit to cancel it.

APPEAL from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

CHARLES M. PEIRCE, for appellants.

JOHN STAPLETON, DOOLEY & DOOLEY, BRACKEN & YOUNG, and DEMANGE, GILLESPIE & DEMANGE, for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

Appellees, on July 7, 1910, filed their bill in the circuit court of McLean county for the partition of about 261 acres of farm lands in that county and certain lots in Leroy, Illinois, and also prayed that dower in all of the property be assigned to Gertrude B. Razor, widow of Frederick Razor, deceased. Appellants answered the bill, denying that the rights and interests of the parties in the real estate were as set forth in the bill, and filed a cross-bill seeking partition of the premises in accordance with the rights of the parties as alleged in the cross-bill. The cause was referred to the master, who reported finding all the material issues in favor of appellees and recommending that a decree be entered in accordance with the prayer of the original bill. After overruling exceptions filed by appellants to the master's report, the court entered a decree for assignment of dower and for partition in accordance with the rights and interests of the parties as set forth in the original bill and dismissed the cross-bill for want of equity. From that

decree appellants, who were complainants in the cross-bill, have prosecuted this appeal.

The appellants are three of the children and devisees of Frederick Razor, deceased, and the executors of his last will and testament. The appellees include the remaining children and the grandchildren who are heirs of the deceased. The provisions of the decree relating to the lots in Leroy are not in controversy here. The three children of Frederick Razor, deceased, who are appellants, claimed by their cross-bill, and are contending here, that their father was at the time of his death, on July 6, 1910, the owner of the farm lands above mentioned, and that they, and certain of his children and grandchildren who are appellees, became seized in fee of said farm lands, as tenants in common, under and by virtue of his last will and testament and subject to his debts. If this contention be sustained, one child of Frederick Razor and two sets of grandchildren have no interest in the real estate, and the interest of each of the remaining children in the real estate, where the same has not been sold and conveyed, is an undivided one-eighth instead of an undivided one-eleventh, as alleged in the original bill and as found by the decree. The appellees, on the other hand, claim title for all the children and certain grandchildren of Frederick Razor, deceased, under deeds from him which they contend were executed and delivered during his lifetime, and by virtue of which, if sustained, his eight surviving children and three sets of grandchildren each became seized, as tenants in common, of an undivided one-eleventh part of said real estate. The material questions here involved, therefore, relate to the validity of the deeds under which appellees claim.

On the hearing before the master, W. B. Carlock, an attorney at law residing at Bloomington, testified that on January 12, 1891, at the request of Frederick Razor, he prepared a deed, which was executed by Frederick Razor, conveying the premises in controversy to the eleven children

of the grantor; that on July 1, 1901, Frederick Razor informed the witness that the deed of January 12, 1891, had been lost or misplaced and requested him to prepare another one in its stead; that a deed was prepared which was intended to be a copy of the former deed, including the date, January 12, 1891, and was executed by Frederick Razor by mark, in the presence of the witness, who, as a notary public, took the grantor's acknowledgment; that thereafter it was discovered that the deed of July 1, 1901, misdescribed a tract of land intended to be conveyed, and on August 15, 1901, the witness prepared, and Frederick Razor executed and acknowledged before the witness, as a notary public, another deed which was intended to be a copy of the deeds of January 12, 1891, and July 1, 1901, except that the premises intended to be conveyed were correctly described in this deed; that thereafter, and on the same day, Frederick Razor informed the witness that two of his children had died since the execution of the deed of January 12, 1891, and that he desired to make another deed containing the names of the heirs of his deceased children in the place of the names of their parents, and that the witness thereupon prepared, and Frederick Razor executed and acknowledged before the witness, as a notary public, a deed in which were substituted the names of the grandchildren instead of the names of their deceased parents, and that this deed was dated August 15, 1901, being the date of its execution. The witness further testified that all of the deeds prepared by him were delivered by Frederick Razor to his sons William Razor and Henry Razor immediately after their execution.

All of the deeds above mentioned, except that of January 12, 1891, were introduced in evidence by the appellees. Each of them expresses the consideration for the deed to be "one dollar and other good and valuable considerations." All purport to have been signed by Frederick Razor by mark, in the presence of Carlock, and to have been acknowl-

edged by the grantor before Carlock, as notary public. The deed which Carlock testifies was executed July 1, 1901, purports on its face to be a quit-claim deed, signed by Frederick Razor under date of January 12, 1891, conveying to the eleven children of the grantor the real estate in controversy, except that one tract is described as being in the south-west quarter of a section instead of the south-east quarter of that section, as described in the bill herein, and contains the following clause: "Deed for above premises made, executed and delivered by grantor herein to grantees herein on January 12, 1891, but same was mislaid and by oversight or inadvertence was not recorded at date of its execution and delivery, and this deed is made as a substitute for and to replace said lost or mislaid deed." This deed purports to have been acknowledged July 1, 1901, and was recorded in the recorder's office of McLean county in book 209 of deeds, at page 507.

The deed which Carlock testifies was first executed by Frederick Razor on August 15, 1901, purports on its face to be a quit-claim deed, signed by Frederick Razor under date of January 12, 1891, conveying to the eleven children of the grantor the real estate in controversy, and contains the clause above quoted from the deed of July 1, 1901, and in addition thereto the following: "Deed recorded in book 209, at 415, of McLean county deed records, between same parties above, was erroneous in the description of the land and was not a true copy of the deed referred to above as having been made January 12, 1891." This deed purports to have been acknowledged August 15, 1901, and was recorded in the recorder's office of McLean county.

The other deed which Carlock testifies was executed by Frederick Razor on August 15, 1901, purports on its face to be a quit-claim deed, signed by Frederick Razor under date of August 15, 1901, conveying to the nine children of the grantor then living, and to the children and heirs-at-law of two of his children then deceased, the real estate here

in controversy, the interest conveyed to each of the grantor's children being stated to be an undivided one-eleventh, that conveyed to each of two children of a deceased daughter an undivided one-twenty-second, and that conveyed to each of five children of another deceased daughter an undivided one-fifty-fifth. This deed purports to have been acknowledged, but the date of the acknowledgment does not appear. It was filed for record in the recorder's office of McLean county on August 17, 1901.

Shortly after the execution and delivery of the deed last mentioned, the grantees therein named, except the minor grandchildren of Frederick Razor, filed a bill to partition the lands in controversy, W. B. Carlock appearing therein as their solicitor. The record shows that all of the grantees mentioned in the deeds dated January 12, 1891, were children by a first wife, from whom Frederick Razor had obtained a divorce; that he was married to Gertrude B. Razor, his second wife, in 1888, and that on April 1, 1891, she obtained a decree for separate maintenance against him. There is also evidence tending to show that Frederick Razor reserved a life estate in the deed of January 12, 1891, and that when the subsequent deeds were executed, although they contained no reservations, yet it was understood between the parties that Frederick Razor should be permitted to received the income from the land during his lifetime. After the bill for partition was filed, in 1901, the children and adult grandchildren of Frederick Razor signed an instrument by which each of them agreed to pay him $1000 out of their respective shares of the proceeds of sale in the partition suit for his support and comfort during his lifetime. Thereafter the bill for partition was dismissed. Carlock testified that the bill was dismissed because they were unable to make satisfactory arrangements with Gertrude B. Razor for the release of her inchoate right of dower, while some of the defendants below testify that it was dismissed because Frederick Razor claimed to own the land

and refused to accept the terms of the instrument above mentioned or to permit the partition and sale of the lands.

During the month of February, 1906, six of the children and one set of the grandchildren of Frederick Razor conveyed to him, by quit-claim deeds, all their interests in the premises, and on March 25, 1907, Frederick Razor filed his bill in the circuit court of McLean county against the remaining children and grandchildren to have the deed of July 1, 1901, and the two deeds of August 15, 1901, removed as clouds upon his title, alleging that those deeds were forgeries and that he did not execute any deed to the premises in January, 1891, as recited in two of those deeds. This suit was still pending in the circuit court at the time of the death of Frederick Razor, the complainant having taken no steps in the cause other than filing the bill of complaint. Thereafter, on January 8, 1909, Frederick Razor, in the presence of two witnesses, executed and acknowledged before Leslie J. Owen, a notary public, a quit-claim deed, which on its face purported to convey to each of the six children and the set of grandchildren who had conveyed the premises to him in 1906, an undivided one-eleventh part of the real estate in controversy, the deed containing the following clause: "It being the intention of the grantor by this deed to convey to grantees seven-elevenths (7/11) of the above described real estate, each grantee receiving the part as hereinbefore designated." Leslie J. Owen, an attorney at law and the notary before whom this deed was acknowledged, testified that the deed was written by him at the request of Jacob Razor, one of the sons of Frederick Razor; that it was then taken to the home of Frederick Razor, read and explained to him by the witness, and executed by the grantor in the presence of the witness, Jacob Razor and L. C. Keenan, a banker of Leroy; that Frederick Razor made some objection to the deed because it did not reserve a life estate to him, but notwithstanding such objection signed it after Jacob Razor had assured him

that he would see that he was taken care of during the re-
mainder of his life and that he should never be without a
home. The testimony given by Owen is corroborated by
that of Keenan and Jacob Razor. The latter testified, as a
witness for appellants, that shortly before this deed was
executed he had a conversation with his father in which he
called his father's attention to the condition of the title to
the real estate as it then stood, and to the fact that in case
his father should die the witness and the other children
who had conveyed to Frederick Razor in 1906 would not
receive an equitable portion of his estate; that his father
said he did not want to leave the title in that condition and
that he would sign a deed; that the witness then employed
Owen to prepare the deed and that his father executed it
at his home; that the deed was taken by Owen to his office
and that the witness obtained it from Owen the next day
and had it recorded.

On February 22, 1909, Henry Razor, one of the chil-
dren of Frederick Razor, executed and delivered to his
brothers George Razor and Jacob Razor a warranty deed
conveying to them an undivided one-eleventh part of the
real estate in question. This deed was recorded February
26, 1909. Both of these grantees were defendants to the
original bill filed herein and George Razor was one of the
complainants in the cross-bill and is one of the appellants
here, and both testified on behalf of appellants at the hear-
ing before the master.

Four of the children of Frederick Razor, all of whom
were defendants to the original bill, testified that they,
together with certain other children and grandchildren of
Frederick Razor, were present at the office of W. B. Car-
lock in 1891 when a conversation took place between Car-
lock and their father; that Gertrude B. Razor had prior to
that time instituted a suit for separate maintenance against
Frederick Razor, and that Carlock was attempting to per-
suade Frederick Razor to execute a deed conveying the

real estate to his children in order to prevent his wife from getting any of his property; that Frederick Razor refused to sign the deed and left the office; that afterwards Carlock went to the home of Frederick Razor and sought to induce him to execute the deed, but that their father refused to do so. This testimony, together with evidence showing that Frederick Razor, up to the time of his death, rented the land to tenants and received the rent therefrom, paid the taxes, made repairs, claimed to own the premises, and that the deeds were found in his safe deposit box after his death, in connection with the fact that Frederick Razor had during his lifetime instituted the suit to set aside the deeds as clouds upon his title, constitutes the principal evidence upon which appellants rely as proving that Frederick Razor was the owner in fee of the premises in controversy at the time of his death.

Appellants first contend that if only the competent evidence in the record is considered it shows that Frederick Razor never executed any of the above deeds, and in this connection argue that Carlock, who testified to the execution of the deeds of January 12, 1891, July 1, 1901, and August 15, 1901; Belle Moore, who testified to the execution of the deeds of January 12, 1891, and July 1, 1901; Henry Razor, who testified to the execution of one of the deeds of August 15, 1901, and Jacob Razor, who testified to the execution and recording of the deed of January 8, 1909, were all incompetent witnesses, and that their testimony should be disregarded in determining the question of the execution of those deeds. With reference to the testimony of Carlock it is contended that the relation of attorney and client existed between Carlock and Frederick Razor at the time the deeds above mentioned purport to have been executed and acknowledged, and that Carlock was therefore not a competent witness. The testimony given by Carlock related solely to matters which came to his knowledge as scrivener, attesting witness and notary public, and

he was a competent witness to testify to those matters. (23 Am. & Eng. Ency. of Law,—2d ed.—76; *Smith* v. *Long,* 106 Ill. 485; *Champion* v. *McCarthy,* 228 id. 87.) He denied that the execution of the deeds had any relation to the separate maintenance suit brought by Gertrude B. Razor, and did not attempt to disclose any matters confided to him as attorney or any advice given by him to Frederick Razor. It is unnecessary to consider the contention that the other parties above mentioned were incompetent witnesses, except to remark that the testimony of Jacob Razor was given while testifying on behalf of appellants, because the execution of the deeds was proven by the certificate of the notary public attached to each. These certificates were *prima facie* proof of the excution of the deeds, (Hurd's Stat. 1909, chap. 30, sec. 35; *Schroeder* v. *Smith,* 249 Ill. 574;) and clear and satisfactory evidence was required to overcome the force and effect of the certificates as evidence that the grantor executed the deeds to which the certificates were attached. (*Russell* v. *Baptist Theological Union,* 73 Ill. 337; *Gritten* v. *Dickerson,* 202 id. 372.) Not only does the record fail to disclose clear and satisfactory evidence contradicting the recitals in the certificates of the notary public to the effect that the deed of July 1, 1901, and the two deeds of August 15, 1901, were executed by Frederick Razor, but it fails to disclose any evidence contradicting those certificates. The appellants' statement in their argument that the four children of Frederick Razor who testified on behalf of the defendants and cross-complainants all testified that they were present and that their father did not sign those deeds is not sustained by the record. The substance of the testimony of those four witnesses was, that they were present at Carlock's office in 1891 and that their father did not sign any deed at that time. The execution by Frederick Razor of the deeds of July 1, 1901, and of August 15, 1901, was clearly established.

The execution of the deed of January 12, 1891, was
not proven with as great a degree of certainty as was the
execution of the other deeds above mentioned, but its exe-
cution was established by a clear preponderance of the evi-
dence. While Carlock's testimony concerning the execution
of that deed is contradicted by the testimony of four of
the defendants to the original bill, the testimony of those
four interested parties is overcome by the statements of
Frederick Razor contained in the deed of July 1, 1901, and
in the deed first executed on August 15, 1901, to the effect
that a deed to the premises had been made, executed and
delivered by him to his eleven children on January 12, 1891,
but had been mislaid and by oversight or inadvertence was
not recorded, and that the subsequent deeds were made as
substitutes for and to replace the lost deed.

The contention that the deed of January 8, 1909, was
never executed by Frederick Razor has no foundation what-
ever in the evidence to support it. The execution of that
deed was not only proven by the certificate of the notary
who took the acknowledgment, but also by the testimony
of Owen, Keenan and Jacob Razor, the latter testifying as
a witness on behalf of appellants. There is no merit what-
ever in appellants' contention that Frederick Razor never
executed the deeds under which appellees claim title to the
premises in question.

Appellants next contend that Frederick Razor never de-
livered any of the deeds, and in support of this contention
rely chiefly upon the fact that they were in the possession
of various attorneys representing him after their execution
and were found in his safe deposit box after his death.
The delivery of the deed of January 12, 1891, is established
by the testimony of Carlock and by the statements contained
in the deeds executed by Frederick Razor on July 1, 1901,
and August 15, 1901, to the effect that the deed of Janu-
ary 12, 1891, was delivered to the grantees; and the de-
livery of the deed of January 8, 1909, is established by the

testimony of Jacob Razor, given while testifying as a witness for appellants, showing the circumstances under which that deed was executed, and showing that the witness received the deed from the notary who took the acknowledgment and filed it for record in the recorder's office on the day following its execution. Carlock testified that the deed of July 1, 1901, and the deeds of August 15, 1901, were all delivered to certain of the grantees therein named immediately after their execution. Those deeds were all voluntary conveyances, made upon a consideration of "one dollar and other good and valuable considerations." Some of the grantees in the deed dated August 15, 1901, were minors, and the other deed executed on that date, as well as the deed executed July 1, 1901, was intended to confirm · the title in those minor grandchildren of the grantor as well as in his children. In *Valter* v. *Blavka,* 195 Ill. 610, where one of the grantees was a minor, we said: "The law always makes stronger presumptions in favor of the delivery of deeds in cases of voluntary settlements than in ordinary cases of bargain and sale. (*Rodemeier* v. *Brown,* 169 Ill. 347.) In such cases 'the presumption of law is in favor of the delivery, and the burden of proof is on the grantor to show clearly that there was no delivery.'—*Bryan* v. *Wash,* 2 Gilm. 557; *Masterson* v. *Cheek,* 23 Ill. 72; *Walker* v. *Walker,* 42 id. 311." Proof that the deeds had been recorded was *prima facie* evidence that they had been delivered by the grantor. (*Hines* v. *Keighblingher,* 14 Ill. 469; *Valter* v. *Blavka, supra; Ackman* v. *Potter,* 239 Ill. 578; *Schroeder* v. *Smith, supra.*) The testimony of Carlock, taken in connection with the fact that the deeds were voluntary conveyances and that some of the grantees were minors, and the further fact that all of the deeds were recorded almost immediately after their execution, overcomes any presumption arising from the fact that the deeds were, after having been recorded, in the possession of the grantor's attorneys and were found among his papers and ef-

251 — 19

fects after his death and that Frederick Razor continued to exercise dominion over the property up to the time of his death. (*Ward* v. *Conklin,* 232 Ill. 553; *Potter* v. *Barringer,* 236 id. 224.) The delivery of the deeds was therefore established by the evidence.

The appellants further urge that there is no evidence showing that Frederick Razor authorized the recording of the deeds in question. The consent of a grantor is not required in order to authorize the grantee to record a deed delivered to him, unless there is an agreement that it shall not be recorded. When the instrument is delivered the grantee may record it, and the fact that it was filed for record raises the presumption that it was delivered by the grantor to the grantee and that it was rightfully filed for record by the grantee or by someone acting for him and in his behalf. There is no evidence in the record tending to show that the grantees had any agreement with the grantor that the deeds should not be recorded, nor is there any evidence tending to show that Frederick Razor, when he executed and delivered the deeds, had any reason to believe that they would not be recorded. The fact that there is no evidence showing that Frederick Razor authorized the recording of the deeds is therefore wholly immaterial.

It is also contended that each of the deeds from Frederick Razor to his children and grandchildren was without consideration. The deeds being voluntary conveyances to the children and grandchildren of the grantor, no valuable consideration was required to render them effective and binding upon grantor. *Oliphant* v. *Liversidge,* 142 Ill. 160.

Appellants further contend that there is no evidence showing that the grantees accepted the deeds. If there were no direct evidence upon this question, the deeds being in the nature of voluntary settlements and beneficial to the grantees, their acceptance would be presumed, especially by the infant grantees. (*Winterbottom* v. *Pattison,* 152 Ill. 334; *Baker* v. *Hall,* 214 id. 364.) The record shows, how-

ever, that after the execution and delivery of the deeds of
July 1, 1901, and August 15, 1901, all of the adult grantees
in those deeds brought suit to partition the lands, claiming
to own them as tenants in common. This action on their
part is conclusive evidence of the acceptance of those deeds
under which they claimed title in that suit.

Appellants next urge that Frederick Razor, by the exe-
cution and delivery of these deeds, attempted to make a
testamentary disposition of his property. This contention
is based upon the evidence showing that Frederick Razor
was permitted to receive the rents and profits from the land
up to the time of his death; that he paid the taxes and made
repairs; that he refused to accept the proposition made by
the grantees to pay him $11,000 out of the proceeds to be
derived from the land in case the partition suit, brought in
1901, should be prosecuted to conclusion and the premises
sold, and other evidence, all of which tended to show that
the grantees at all times after the execution of the deeds
recognized the existence of a life estate in Frederick Razor.
This evidence is not sufficient to show that the deeds were
testamentary in character. All of the deeds were delivered
to the grantees by the grantor during his lifetime and vested
the title to the premises in the grantees immediately upon
delivery. It is only where a deed is not delivered by the
grantor during his lifetime that it can be said to be testa-
mentary in character, and the fact that a life estate is re-
served to the grantor, or, without such reservation, that he
is permitted to retain possession and control of the premises
and receive the rents, issues and profits during his lifetime,
even though the deed is found in his possession after his
death, cannot render the instrument testamentary in char-
acter. *Potter* v. *Barringer, supra.*

It is finally contended that Frederick Razor, by bringing
suit to cancel and set aside the deeds, repudiated each of
them. That suit was based upon the charge that the deeds
were forgeries. That charge is wholly disproved by the

evidence in this case. After executing and delivering the deeds it was not within the power of the grantor to repudiate them. (*Potter* v. *Barringer, supra.*) The bill filed by him in 1907, consisting of his unsworn statements and charges, cannot be considered for any purpose in determining whether the deeds in question passed title to the grantees therein named. The fact, however, that he took no further steps in the cause after filing the bill, together with the fact that he thereafter reconveyed to certain of his children and grandchildren the undivided seven-elevenths part of the premises which those same children and grandchildren had conveyed to him before he filed the bill against the remaining children and grandchildren, would seem to indicate that he had before his death abandoned his suit and recognized the validity of the former deeds.

On the whole record the equities of the cause are manifestly with appellees, and the decree will therefore be affirmed.

*Decree affirmed.*