**TIGER et al. v. LOZIER et al.**

No. 15893—Opinion Filed April 26, 1927.

(Syllabus.)

1. **Trial—Adoption by Court of Findings Submitted by Counsel not Error When Supported by Evidence.**

Where, after the submission of the evidence to the court, the court thereupon requests counsel for the opposing parties to the action to formulate and submit to the court findings of fact and conclusions of law thereon, and the court, thereafter, adopts the findings of fact and conclusions of law as submitted by counsel for one of the parties to the action, and such findings of fact are reasonably supported by the evidence in said cause and the conclusions of law thereon are correctly stated, the fact that such findings were tendered the court prior to their adoption by counsel does not constitute error.

2. **Witnesses—Confidential Communications with Attorney—Waiver of Privilege.**

Where a person offers himself as a witness and testifies on the same subject-matter concerning the professional relations with an attorney, such party then waives the privilege of such attorney testifying on the same subject-matter.

3. **Indians—Approval of Deeds of Full-Blood Heirs by County Court—Court Rules of Procedure not Mandatory.**

The county courts of the state act as federal agencies in the matter of passing upon deeds presented to them for approval by full-blood Indian heirs, and while acting in this capacity the failure of such courts to either adopt rules relating to the manner of conducting such sales or the failure to follow such rules they may adopt does not affect their acts in approving or failing to approve a deed presented to such court for its consideration.

4. **Deeds—Test of Mental Capacity of Grantor.**

"The test of capacity to make a deed is that the grantor shall have the ability to understand the nature and effect of the act in which he is engaged and the business he is transacting. To invalidate a deed it must appear that the grantor was incapable of comprehending that the effect of the deed, when made, executed, and delivered, would be to divest him of the title to the land set forth in the deed." Miller v. Folsom, 49 Okla. 74, 149 Pac. 1185.

5. **Deeds—Contracts—Validity not Affected by Mistake of Law as to Interest of Heir.**

Where all the facts are fully known to the heirs of a deceased person respecting their number, the identity and relationship to a deceased person, and an error is made by them as to the quantity of interest of any such heir based upon full knowledge of all the facts, the same constitutes a mistake of law, and is not such a mistake as will relieve either party from a contract voluntarily entered into in the absence of fraud, misrepresentation, or duress.

6. **Indians—Validity of Deed of Full-Blood Heirs Approved by the County Court—Subsequent Approval as to Some of Heirs.**

Where a deed was presented to the county court on the 12th day of August, 1909, said court having jurisdiction to approve a deed from full-blood Indian heirs of a deceased allottee, and such court thereafter, to wit, on the 6th day of October, 1909, duly approved said deed, but erroneously found that only one of the grantors therein had any interest in said land, but the grantors, after receiving the proceeds from said sale, divided the money equally among themselves according to their interest in said land, and thereafter, on the 5th day of November, 1914, such of the grantors who were not classed as having an interest in said land by the county court at the time it approved said deed on October 6, 1909, filed their petition in said county court asking that the deed to their interest in said land be approved, which was accordingly done on the 5th day of November, 1914, held, that the approval of the said deed by the court on November 5, 1914, is valid and binding as to such grantors.

Error from District Court, Creek County; Fred A. Speakman, Judge.

Action by Mollie Tiger and others against F. S. Lozier and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

Lewis C. Lawson, for plaintiffs in error.

Geo. S. Ramsey, Alvin Richards, F. A. Calvert, John M. Chick, Edgar A. de Meules, and Villard Martin, for operating lessees. defendants in error.

Thrift & Davenport, W. P. Pryor, and Sam T. Allen, for fee-owners, defendants in error.

LESTER, J. The plaintiffs in error occupy the same relative position in this court as they did in the district court.

The plaintiffs brought an action in the district court of Creek county against the defendants in which plaintiffs sought the possession of certain lands, the cancellation of instruments affecting title to said lands, and for an accounting of the rents, profits, and royalties thereon.

Upon trial in the district court, judgment

was rendered in favor of the defendants and dismissing the plaintiffs' cause of action.

The facts, in brief, in the instant case are as follows:

Sina Crow was an enrolled member of the Creek Nation. She died intestate in August, 1899. She left a minor child, Susie Crow, who died shortly thereafter without issue.

At the death of Susie Crow her nearest relatives were Fannie Fulsom, grandmother, also Mollie Tiger and Baby Cumsey, who were sisters to the mother of Susie Crow.

A patent was issued to the land involved herein on May 14, 1906, in the name of Sina Crow. There is no contest in this case beween the heirs of Sina Crow. A purported quitclaim deed was prepared to the lands involved in this action and duly signed by Fannie Fulsom, Mollie Tiger, and Baby Cumsey, in which they conveyed to F. S. Lozier all their rights, title, and interest in the land involved herein in consideration of $800. This deed, together with a petition for its approval, was filed in the county court of Creek county on the 12th day of August, 1909. Appraisers were appointed by the county court to appraise the value of said land, and said appraiser, thereafter, filed their appraisements in the county court of said county, in which they fixed the value of the said land at $800.

On the 6th day of October, 1909, the county court of said county duly approved said deed, and in its order approving said deed found that the estate ascended under the laws of the Creek Nation and that Fannie Fulsom inherited the entire allotment, and further ordered that the entire proceeds from said sale be paid to Fannie Fulsom.

On the 5th day of November, 1914, Mollie Tiger and Baby Cumsey presented to the county court of Creek county a petition to correct the order of the county court made on the 6th day of October, 1909, wherein it recited that Fannie Fulsom was the sole heir to the inheritance of Susie Crow. They also asked in their petition that the deed which was filed in the county court on August 12, 1909, be approved as to their interests.

The county court of Creek county, on the said 5th day of November, 1914, entered its order approving the deed theretofore filed in the said court on the 12th day of August, 1909.

At the conclusion of the trial in the district court, the court found practically every issuable fact in favor of the defendants and against the plaintiffs. It also rendered its conclusions of law in favor of the defendants and against the plaintiffs.

In reviewing the facts in this case it will be observed that certain proceedings and transactions were had in which the plaintiffs are designated under different names, therefore, in order to avoid confusion, it may be well to state that it is admitted by all parties to this action that:

Ah-la-co-hon-ny Fulsom and Fanny or Fannie Fulsom are one and the same person.

Mollie Crow Tiger and Mollie Tiger are one and the same person.

Baby or Babie Barnett and Baby or Babie Cumsey and Babie Crow Barnett are one and the same person.

The plaintiffs in error present and urge a very large number of assignments of error. The parties to this case have presented voluminous briefs in support of their positions and we will discuss such of them as we think are germane and necessary in disposing of said cause, and we will dispose of the assignments of error in the order designated by the plaintiffs.

The plaintiffs' 1st assignment of error is that the court erred in its manner of adopting its findings of fact and conclusions of law thereon. It appears that at the conclusion of the testimony the court requested counsel for the plaintiffs and defendants to prepare, for the benefit of the court, findings of fact and conclusions of law thereon. It appears that both parties to the action complied with the request of the court and the court adopted as its findings of fact and conclusions of law thereon as tendered the court by the defendants. This identical question was before the court in the case of Howard v. Howard, 52 Kan. 469, 34 Pac. 1114, wherein the court said:

"The second objection is that the findings made by the court were prepared by the attorneys for defendant. * * * It is not an uncommon practice for the attorneys of the respective parties to formulate such findings as they desire to have made, leaving the court to adopt them, or such of them as in its judgment have been established by the proofs. The findings presented to the court in this case were adopted by the court as its own, and the fact that they were formulated by counsel is no ground for criticism or objection."

In our judgment it was not erroneous in the court adopting the findings of fact and conclusions of law as formulated by counsel for the defendants.

Plaintiffs' 2nd assignment of error is predicated upon the court permitting James J. Mars to testify in said cause over the objection of the plaintiffs. It appears that the plaintiffs together with F. S. Lozier, one of the defendants, went to the office of said James J. Mars, who is an attorney, and called on him to prepare a quitclaim deed to said property and also a petition to the county court praying that the court approve said deed. It appears that Mars, in his testimony, identified three receipts for $10; each was signed by Fannie Fulsom, Mollie Tiger, and Baby Cumsey; that he wrote the name of Ah-la-co-hon-ny Fulsom to said deed, as well as the words "her mark," and made her mark while she touched the pen; that he witnessed the signatures to the deed and petition for approval; that the receipts were signed in his presence; that he dictated the petition for approval to his stenographer; that some of the marks and figures in the petition for approval were placed thereon in the presence of Josiah G. Davis, county judge; that the balance of the consideration, to wit, $770, was deposited with the county judge at the time the petition for approval was filed; that the deed was presented to the county court with the petition for approval; that the deed to Lozier was executed in his presence and in the presence of H. M. Ausmus and John Tiger; that John Tiger acted as interpreter; that Mollie Tiger signed her name and speaks English brokenly; that Baby Cumsey signed her name and appeared to understand some English and could speak it brokenly.

The witness further testified that after the deed was approved on the 6th day of October, 1909, the $770 check was cashed by him and the money divided equally among Fannie Fulsom, Mollie Tiger, and Baby Cumsey; that when the matter was up before the county judge for approval he had quite an extended and heated controversy with the judge over the question of whether or not the Creek or the Arkansas law of descent controlled the devolution of the land, and that he contended the Arkansas law controlled and Judge Davis contended that the Creek law controlled and that he contended to the court that Fannie, Mollie, and Baby inherited the land equally under the Arkansas law.

The defendants contend that Mars having been a subscribing witness to the deed and petition of approval and their attorney in the transaction, his disqualifications to testify were waived and removed

In the case of Grant v Harris, 82 S. E.

718, the Supreme Court of Appeals of Virginia said:

"The case made by the appellant's pleadings and her own evidence tends to show that Messrs. Bailey and Price, who acted as her counsel in making the settlement evidenced by the deeds and agreement of February 21, 1910, were not employed by her for that purpose; that in making the settlement they were doing and having things done which she did not authorize, approve, or understand. that they were acting in accordance with the wishes of Mr. Harris in all things, and that she was required to do things to her prejudice when she did not know, and did not have the mental capacity to understand, what she was doing, and when she was under duress. Under these circumstances it would seem clear that the client should be held to have waived her privilege, and that the attorneys who acted for her in the transaction sought to be set aside should be permitted to give their version of the transaction, not only in the interest of justice to the parties to the litigation, but also for the protection of the attorneys themselves. To hold otherwise would subject the attorney to scurrilous and unjust attacks, and convert the rule which was intended only as a shield for the client's protection into a weapon of offense against others. The authorities generally hold that a client who goes upon the stand in an attempt to secure some advantage by reason of transactions between himself and his counsel waives his right to object to the attorney's being called by the other side to give his account of the matter. Such waiver, it is held, is in no sense contrary to public policy, but is in the interest of truth and justice. See Kelly v. Cummens, supra, and note. page 1286, where numerous cases are cited, among them Hunt v. Blackburn, 128 U. S. 464, 9 Sup. Ct. 125, 32 L. Ed. 48."

In Hunt v. Blackburn, 128 U. S. 464, 32 L. Ed. 489, a leading case, it is said:

"Defendant Blackburn insists, however, in her answer. that the part she took in the litigation of these two cases was the result of misplaced confidence in her counsel, by whom she alleges she was deceived. misadvised, and misled; that she was ignorant of her rights, and that she ought not to be held estopped in the premises; while at the same time it is objected, on her behalf. that her attorney, on the ground of privileged communications. should not be permitted to defend himself by testifying to the facts and circumstances under which he advised her and the advice which he actually gave.

"The rule which places the seal of secrecy upon communications between client and attorney is founded upon the necessity, in the interest and administration of justice. of the aid of persons having knowledge of the law and skilled in its practice, which assistance

can only be safely and readily availed of when free from the consequences or the apprehension of disclosure. But the privilege is that of the client alone, and no rule prohibits the latter from divulging his own secrets. And if the client has voluntarily waived the privilege, it cannot be insisted on to close the mouth of the attorney. When Mrs. Blackburn entered upon a line of defense which involved what transpired between herself and Mr. 'Weatherford, and respecting which she testified, she waived her right to object to his giving his own account of the matter."

In Lansburgh v. McCormick, 224 Fed. 874-881, the United States Circuit Court of Appeals for the Fourth Circuit said:

"In the meeting the charge that Flournoy and his associates had betrayed the trust which as counsel they owed to Lansburgh, all communications written and oral between them and Lansburgh or his counsel in Washington were clearly admissible in their vindications. Hunt v. Blackburn, 128 U. S. 464, 9 Sup. Ct. 125, 32 L. Ed. 489; Grant v. Harris, 116 Va. 642, 82 S. E. 718."

See, also, Brown v. State, 9 Okla. Cr. 382, 132 Pac. 359, following the rule announced by the United States Supreme Court in Hunt v. Blackburn, 128 U. S. 464, supra.

In the instant case it is not shown that any confidential communications between plaintiffs and witness Mars were disclosed by his testimony.

The witness Mars was a subscribing witness to the deed herein involved, and from our examination of the authorities it seems to be well settled that an attorney who is a subscribing witness to a deed may be compelled to testify.

We find this statement in Wigmore's Evidence (2nd Ed.) vol. 4, sec. 2315:

"Accordingly, it has always been held that an attorney who signs in attestation of a deed is compellable to testify. The same consequence ensues for a will, not only as to the tenor and the act of execution, but also as to the circumstances affecting sanity and influence; for, since the intention at large negatives confidence, no discrimination can be made, as already noticed (ante, sec. 2314), for particular facts which now turn out to invalidate the will."

In a very able and exhaustive annotation to Collins v. Hoffman, Ann. Cas. 1913-A, page 14, the annotator says:

"An attorney who becomes a subscribing witness to a writing even though he is the counsel of one of the parties thereto, may be required to testify, as fully as other subscribing witnesses, to the execution, consider-

ation, and the circumstances attending the execution of the writing. Doe v. Andrews, 2 Cowp. (Eng.) 846; Rosseau v. Bleau, 131 N. Y. 177, 30 N. E. 52, 27 Am. St. Rep. 578, reversing 60 Hun, 259, 14 N. Y. S. 712; Utica Bank v. Mersereau, 3 Barb. Ch. (N. Y.) 528, 49 Am. Dec. 189; Coveney v. Tannahill, 1 Hill (N. Y.) 33, 37 Am. Dec. 287; Hughes v. Boone, 102 N. C. 137, 9 S. E. 286; Moffatt v. Hardin, 22 S. C. 9; Brazel v. Fair, 26 S. C. 370, 2 S. E. 293; Strickland v. Capital City Mills, 74 S. C. 16, 54 S. E. 220, 7 L. R. A. (N. S.) 426. See, also, Fuller v. Wood, 137 Ga. 66, 72 S. E. 504; Spencer v. Razor, 251 Ill. 278, 96 N. E. 300."

Section 589, C. O. S. 1921, in part provides:

"The following persons shall be incompetent to testify: * * * An attorney, concerning any communications made to him by his client, in that relation, or his advice thereon, without the client's consent."

The latter part of subdivision 6 of section 589, C. O. S. 1921, is as follows:

"Provided, that if a person offer himself as a witness, that is to be deemed a consent to the examination also of an attorney, clergyman, or priest, physician, or surgeon on the same subject, within the meaning of the last three subdivisions of this section."

Each of the three plaintiffs took the witness stand in their own behalf and in behalf of each other, and each testified about matters concerning the same subject that was testified to by the witness Mars; therefore, we clearly think that the same constitutes a waiver of their right to object to the testimony of said witness.

Plaintiffs' 3rd assignment of error is that the court erred in finding

"that the plaintiffs, under the name of Mollie Crow Tiger, Baby Barnett, and Ahlacohonny Fulsom, did, on the 12th day of August. 1909, execute and acknowledge a quitclaim deed to F. S. Lozier, a copy of which deed is as follows: * * *"

Plaintiffs in their petition in the district court alleged that Fannie Fulsom, Baby Cumsey, and Mollie Tiger did not execute said deed, and that Fannie Fulsom did not execute said deed as required by law, and that Mollie Tiger and Baby Cumsey intended only to sign said instrument as witnesses thereto. We have examined the record on this point and find that the same is fairly sustained by the evidence, and we are not, therefore, inclined to disturb this finding of fact by the court.

It is insisted by the plaintiffs that the signature of Fannie Fulsom was not execut-

ed as required by law. Compiled Laws of 1909, which was in force at the time Fannie Fulsom is alleged to have executed said deed, is as follows:

Section 2838 provides:

"The term 'signature' includes any name, mark or sign written with the intent to authenticate any instrument or writing."

Section 2965 provides:

" 'Signature' or 'subscription' includes mark, when the person cannot write, his name being written near it, and written by a person who writes his own name as a witness."

Section 6492 provides:

"The term 'signature' includes a mark when the person cannot write, his name being written near it, and the mark being witnessed by a person who writes his own name as a witness, except to an affidavit or deposition, or a paper executed before a judicial officer, in which case the attestation of the officer is sufficient."

The witness, Mars, testified emphatically to having seen her make her mark to her signature. Defendant Lozier testified that Fannie Fulsom made her mark by touching the pen.

Plaintiffs cite several cases from the Alabama Supreme Court touching the sufficiency of signature of a person who cannot write. In the case of Houston v. State, 114 Ala. 15, the court said:

"The very purpose of the statute in requiring that the making of a mark by the mortgagor in the execution of the mortgage should be attested by a witness who could write his name, is to prevent injustice or fraud being committed, and is intended as a security against clandestine conveyances,—it is for the protection of the one who executes the instrument. It would be a violation of the words, and go far to defeat the policy and emasculate the requirements of this statute, if it should be construed as sanctioning an attestation of a witness who makes his mark only, when the party executing the instrument subscribes only by a mark."

In the instant case the deed was signed in the presence of James J. Mars and H. M. Ausmus and was duly acknowledged before George A. Smith, notary public, he having certified that the makers appeared before him and acknowledged to him that they executed the same as their free and vountary act.

This acknowledgment was executed by the notary public on the 12th day of August, 1909. We, therefore, conclude that the evidence justified the trial court in finding that the deed that had been executed by Fannie Fulsom was in accordance with the statutes in force relating to the execution of a deed by a person who could not write their name.

The 4th assignment of error upon the part of the plaintiffs is that the court was not justified in finding that the deed purporting to have been executed by the plaintiffs was read over and understood by the plaintiffs at the time they executed the same. It appears that John Tiger, husband of Mollie Tiger, acted as interpreter between the plaintiffs herein and Lozier, one of the defendants, at the time the deed was purported to have been executed.

The court in its said finding of fact found that said plaintiffs understood the consideration and terms of the said transaction at the time they signed said deed. We have examined the evidence upon this proposition, and find that the same is fairly supported by the evidence in the record.

Plaintiffs' 5th assignment of error consists in the court finding:

"That the quitclaim deed purported to have been executed by the plaintiffs was understood by the plaintiffs to be subject to the approval of the county court."

We think this finding upon the part of the trial court was justified from the evidence adduced before it.

Plaintiffs' 6th assignment of error is that the court erred in finding that the sum of $800 was a full, fair, and adequate consideration for the land at the time the said deed was approved on October 6, 1909, and further finding that F. S. Lozier made no misrepresentation of said land as to the consideration and value after or before the execution of the deed on August 12, 1909.

John F. Eagan, one of the appraisers appointed by the county court to appraise the value of said land, testified in part as follows (C.-M. 318):

"We went to the land, and it was rather high land, scattered trees around and a good deal of rocks. for agriculture land it was worth scarcely anything. It was fairly good pasture land at that time."

C. A. Vaughn. also one of the appraisers appointed by the county to appraise the value of said land, testified in part as follows (C.-M. 566):

"Q. When you appraised the land, Mr. Vaughn, did you go upon the land and go all over it?

"A. Oh, possibly, not all over it; pretty

much so. We found the corners and located the corners, knew where the land was and looked over it until we were satisfied."

At page 565, C.-M., the following colloquy took place between Mr. Lawson, counsel for plaintiffs, and Mr. Lytle. one counsel for the defendants, upon the offer of C. A. Vaughn as a witness in said cause:

"Mr. Lawson: What are you going to offer him on, that of appraisement?

"Mr. Lytle: Yes. sir; and the reasonable value of this allotment in 1909.

"Mr. Lawson: I have no objection to the appraisement.

"Mr. Lytle: Do you admit the value as set forth here as being a reasonable market value?

"Mr. Lawson: No, but the appraisement is all right."

From an examination of the record, we do not find any sufficient evidence that would have justified the district court in holding that the defendant Lozier, in any manner, misrepresented the value of said land to the plaintiffs, or that he misrepresented to them as to who were the rightful heirs to said land or the quantity of interest owned by the plaintiffs at the time he procured the deed from them.

The 7th assignment of error upon the part of the plaintiffs consists in the objection to the court's fifteenth finding of fact, wherein the court found that Mars insisted to the county court the fact that Fannie Furoom was not entitled to the entire consideration paid by defendant Lozier for said land. The witness Mars, on this point was supported by Lozier, and we do not feel justified in disturbing the court's finding of fact upon this point.

Plaintiffs' 8th assignment of error is practically abandoned, for in their brief they say:

"This finding is substantially correct, according to testimony and proofs in this case."

Plaintiffs' 9th assignment of error is based upon the seventeenth finding of fact by the court, in which the district court found that Robinson, one of the lessees from the defendant Lozier, had no knowledge of the transaction between the plaintiffs and defendant Lozier in reference to the purchase of the land involved in this cause. Under our theory of the case, we do not think this finding of fact upon the part of the court becomes material.

Plaintiffs' 10th assignment of error is

based upon the court finding that the Quaker Oil Company purchased from Robinson without knowledge or notice of the transaction between Lozier and the plaintiffs. As we view this case, we do not think this finding becomes material.

Plaintiffs' 11th and 12th assignments of error are predicated upon the court finding certain consideration paid by one lessee to another upon leases executed upon said land. These findings, in our judgment. are not prejudicial to the interest of the plaintiffs.

Plaintiff's 13th assignment of error is based upon the court finding that certain of the defendants who were transferees of certain instruments had no knowledge of any fraud practiced by defendant Lozier upon the plaintiffs. This finding, in our judgment, is immaterial under our view of the issues in this case.

The plaintiffs' 14th assignment of error is based upon the court's finding:

"That on the morning of November 5, 1914, plaintiffs', Mollie Tiger and Baby Cumsey, in company with John Tiger, went to the office of McDougal & Lytle in Sapulpa, Okla., and stated that they each lacked $50 of receiving their full share of the $800 consideration paid by Lozier for the deed of August 12, 1909, and thereupon said Lytle gave each of them a $500 check drawn by H. U. Bartlett on his bank account. which check was cashed, and on that same date said Lytle drew up a petition to the county court of Creek county for a second approval of said deed of August 12, 1909, to said Lozier. * * *"

The deed was thereupon, on the said date, approved by the county court. There was embraced in said 14th assignment of error upon the part of the plaintiffs, objections made by the plaintiffs to the testimony of L. O. Lytle, who is an attorney and one of the defendants in said cause. We think the court was justified, under the evidence, in its said finding of fact, provided that the said L. O. Lytle was competent to testify in said cause.

In the 13th paragraph of the plaintiffs' amended petition (C.-M. 23) they allege:

"That said McDougal and Lytle for many years last past have been engaged in the practice of law in said Creek county under the firm name of McDougal & Lytle; that on or about the 5th day of November, 1914. said McDougal & Lytle, without the knowledge, consent, or direction of these plaintiffs, prepared an instrument in the nature of a petition, purporting to be on behalf of the plaintiffs, Mollie Tiger and Baby Cumsey, and presented the same to the said county

court, for the alleged purpose of having said deed to said Lozier for said allotment dated the 12th day of August, 1909, approved as to said Mollie Tiger and Baby Cumsey, and on said date, presented the same to said county court for such alleged purpose."

It is thus seen that the plaintiffs disavowed any relation that might have existed between themselves and L. O. Lytle. They go farther and charge said firm of McDougal & Lytle, of which said L. O. Lytle is a member, with preparing a petition in said cause without the consent or knowledge of said plaintiffs, and if this fact is true, it then amounts to gross fraud and misconduct upon the part of the attorney, L. O. Lytle, and while the law, in order to promote justice, inhibits an attorney from disclosing communications made between himself and client, it would not withhold from an attorney the right to testify in regard to his conduct, where the same has been attacked in the court by a litigant, and where the litigant goes upon the witness stand and testifies to such matter. he, thereby, waives the privilege granted him by the rules of evidence.

We do not think there was any error in permitting the witness L. O. Lytle to testify in said cause.

The 15th assignment of error is based upon the trial court's finding of fact wherein the trial court held:

"That at no time on or before November 5, 1914, had the county court of Creek county formally or by any order adopted the Supreme Court Rule 10, promulgated by the Supreme Court on June 11, 1914, effective July 15, 1914, purporting to lay down the procedure for the county courts to follow in considering and acting upon conveyances executed by full-blood Indian heirs under the provisions of section 9 of the Act of Congress of May 27, 1908."

In the case of Haddock et al. v. Johnson et al., 80 Okla. 250, 194 Pac. 1077, in syllabus No. 6 of said opinion, the court said:

"The failure of the county court to follow the procedure provided for in former rule 10 of this court, in approving conveyance of full-blood Indian heirs, as provided for in section 9 of the Act of May 27, 1909, does not render said conveyance void for that reason.".

Again, in the case of Molone et al. v. Wamsley, 80 Okla. 181, 195 Pac. 484, the court, in syllabus No. 3 of said opinion, stated:

"Chapter 198, Session Laws of 1915, sec. 2, provides: 'All petitions for the approval of deeds to lands inherited by full-blood Indian heirs shall be verified by one or more of the grantors, and shall contain the following information,' etc. Held, that the state Legislature has no power to enact a statute that affects the validity of conveyances by full-blood Indian heirs. This right and power being vested exclusively in the Congress, the above-quoted act of the Legislature is directory and not mandatory, and the failure of the approving federal agency to comply with the terms of same or to require the vendor or vendee in such conveyance to comply with same does not invalidate such conveyance."

We, therefore, conclude that there is no prejudicial error in this finding of fact upon the part of the trial court.

The plaintiffs, in their brief, at page 135, in discussing the 15th assignment of error, say in part:

"As county courts when approving these full-blood Indian deeds are acting simply as federal agencies, Parker v. Richard, supra, they could adopt whatever rules they saw proper in so doing; and could adopt and accept said Rule 10 of this court as the method of approving such deeds. It should be remembered that Congress in section 9 of said Act of May 27, 1908, did not prescribe the way or manner in which such courts could make such approval."

The plaintiffs have conceded that the county court, as a federal agency of the government. could adopt or reject whatever rules they saw fit in the manner of approving deeds to the lands of restricted heirs. We, therefore, hold that if the trial judge was not justified in its 23rd finding of fact, the same does not, thereby, constitute prejudicial error.

Plaintiffs' 16th assignment of error is predicated upon the court's 24th finding of fact, wherein the court found:

"That neither Fannie Fulsom, Mollie Tiger, nor Baby Cumsey is now or was at any time heretofore a person of unsound mind or mentally incompetent, and neither of said plaintiffs were under any disability except the disability imposed by the Act of Congress prohibiting them from alienating their own allotments of inherited lands without the approval of the federal agency."

It appears from the witnesses who testified in the case that each of the plaintiffs was enabled to make intelligent transactions in the matter of purchasing goods, wares. and merchandise at mercantile establishments and that they possessed such a degree of mental intelligence as usually possessed by full-blood members of their tribe.

Fannie Fulsom testified:

"I was told that Lozier said that the land was not much good and that he would only pay me $800 for it."

In the trial of said cause plaintiffs did not introduce any witness nor offer any evidence to show that the sum of $800 paid by defendant Lozier as consideration for the said land, was inadequate.

The court on numerous occasions has had before it the question as to what mental incapacity a person must possess in order to avoid a contract by deed.

In the case of Miller v. Folsom, 49 Okla. 74, 149 Pac. 1185, this court said:

"The test of capacity to make a deed is that the grantor shall have the ability to understand the nature and effect of the act in which he is engaged and the business he is transacting. To invalidate a deed it must appear that the grantor was incapable of comprehending that the effect of the deed, when made, executed, and delivered. would be to divest him of the title to the land set forth in the deed."

Again, in the case of Loman et al. v. Paullin. 51 Okla. 294, 152 Pac. 73, this court said:

"Mere weak-mindedness, whether natural or produced by old age, sickness, or other infirmity, unaccompanied by any other inequitable incidents, if the person has sufficient intelligence to understand the nature of the transaction, and is left to act upon his own free will, is not a sufficient ground to defeat the enforcement of an executory contract, or to set aside an executed agreement or conveyance." (Following the rule laid down by Pomeroy's Equity Jurisprudence, vol. 2, section 947.)

We, therefore, hold that the court did not commit prejudicial error in holding that the plaintiffs were mentally capacitated to execute the deed in question.

Plaintiffs' 17th assignment of error is based upon the court's 25th finding of fact, which, plaintiffs in error concede, is correct, but contend that it is inconsistent with other findings made by the court.

The plaintiffs assign the 26th finding of fact as error and by error numbered the said assignment as its 17th assignment. For convenience we will refer to it as 17th assignment A. The court in its 26th finding of fact found that the plaintiffs had personal knowledge as to who were the heirs of Sina and Susie Crow. We cannot see how, in any manner, this finding of fact would be prejudicial to the interest of the plaintiffs.

The plaintiffs' 18th assignment of error is predicated upon the finding of the trial court:

"That page 490 of Mansfield's Digest of the Laws of Arkansas control the descent of the said Sina Crow allotment."

All parties to this action have, throughout the entire case, conceded and agreed that the lands in this cause were controlled by the laws of descent of the state of Arkansas.

Creek county, prior to statehood, was included in the boundaries of Indian Territory, and by act of Congress it had put in force in the Indian Territory certain laws of the state of Arkansas pertaining to descent and distribution of real property.

Plaintiffs' 19th assignment of error is predicated upon the court finding:

"That Fannie Fulsom, the grandmother, Mollie Tiger, and Baby Cumsey, the aunts, were the sole heirs of Susie Crow and have inherited an undivided one-third interest in said land."

It appears that, when the matter of approval was being heard in the county court on October 6. 1909, J. J. Mars, who represented the plaintiffs in the sale of said land, argued to the court that each grantor, who are the plaintiffs in this action, had inherited one-third each of said allotment.

When the plaintiffs, who presented their petition to the county court of Creek county asking that their deed to Lozier be approved by said court, set up certain facts which clearly showed that Fannie Fulsom was the grandmother of Susie Crow and that Mollie Tiger and Baby Cumsey were aunts of Susie Crow, the heirs of Susie Crow, as well as the county court, were cognizant of all the facts relating to the nearest of kin to said Susie Crow, and the county court, in its order approving the deed to Lozier, reciting that Fannie Fulsom was entitled to the entire estate, committed an error of law.

It is well settled in this state that where all the parties are in full possession of all the facts regarding their relation and kinship to another, are mistaken only as to their quantity of interest in such estate, it then constitutes a mistake of law.

This court in the case of Sawyer v. Bahnsen, 102 Okla. 41. 226 Pac. 344, said:

"A mistake as to the extent of the title to real estate, under undisputed facts, constitutes a mistake of law and not of fact, and is not such a mistake as will relieve either party from a contract voluntarily entered into in the absence of fraud, misrepresentation, or duress."

Also, in the case of Watashe v. Tiger et al., 88 Okla. 77, 211 Pac. 415. it is said:

"A mere mistake of law, not accompanied by other circumstances demanding equitable relief, constitutes no ground for rescission or cancellation of a deed to lands based upon such mistake."

Also, in the case of Palmer v. Cully et al., 52 Okla. 454, 153 Pac. 154, it is said:

"A 'mistake of law' happens when a party, having full knowledge of the facts, comes to an erroneous conclusion as to their legal effect. It is a mistaken opinion or inference arising from an imperfect or incorrect exercise of the judgment upon the facts as they really are."

Also, in Campbell v. Newman, 51 Okla. 121, 151 Pac. 602, it is announced:

"The father and mother, members of the Chickasaw Nation, of less than one-half blood, for a valuable consideration, joined in executing a warranty deed conveying to their minor son a part of the allotment of their deceased daughter, who died intestate, unmarried, and without issue, believing that they owned only a life estate in the allotment, when under the law of descent the father owned the fee therein. Held, that after the father discovers that he was mistaken in the law of descent, under which the allotment of the deceased daughter was cast, he cannot maintain an action to cancel the deed to his son and to quiet title to the land conveyed on the ground of 'mistake of law'."

We, therefore, conclude that the 19th assignment of error is without merit.

Plaintiffs' assignments of error numbered 20, 21, 22, and 23 will be grouped together, for in them is discussed the approval, by the county court on October 6, 1909, and November 5, 1914, of the deed by plaintiffs to the defendant Lozier.

The county court of Creek county, on the 6th day of October, 1909, in its order approving said deed, recited therein the following:

"The court further finds that the said Ah-la-co-hon-ny Fulsom, under the laws of descent and distribution of the Creek Nation, is entitled to said estate and lands of her deceased daughter. Sina Crow, and that she, Mollie Tiger and Baby Barnett, as the sole and only heir at law of the said Sina Crow, deceased, on the 12th day of August, 1909, made and executed to F. S. Lozier, her certain quitclaim deed, conveying to said F. S. Lozier all of her right, title, and interest in and to the above described land; which said deed was delivered to this court pending the approval thereof.

"The court further finds that the consid-

eration of $800, for the above described land aforesaid, is adequate, and that $770 has been paid by said F. S. Lozier into this court for the said legal representative of the said Sina Crow, allottee, deceased, and that the balance has been duly paid direct to said Ah-la-co-hon-ny Fulsom."

In the case of Parker v. Richard, 250 U. S. 235, the court having under consideration section 9 of the Act of May 27, 1908, c. 199, 35 Stat. 312, the court said:

"By the Act of 1908, which imposed the restrictions on alienation and contained the leasing provision, Congress further declared, in section 9, 'that the death of any allottee * * * shall operate to remove all restrictions upon the alienation of (the) allottee's land: Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee.' In the absence of the proviso it would be very plain that. on the death of the allottee, all restrictions on the alienation of the land allotted to him were removed. But the proviso is there and cannot be disregarded. It obviously limits and restrains what precedes it. In exact words it puts full-blood Indian heirs in a distinct and excepted class and forbids any conveyance of any interest of such an heir in such land unless it be approved by the court named. In other words, as to that class of heirs the restrictions are not removed, but merely relaxed or qualified to the extent of sanctioning such conveyances as receive the court's approval. Conveyances without its approval fall within the ban of the restrictions. That the agency which is to approve or not is a state court is not material. It is the agency selected by Congress, and the authority confided to it is to be exercised in giving effect to the will of Congress in respect of a matter within its control. Thus in a practical sense the court, in exercising that authority, acts as a federal agency; and this is recognized by the Supreme Court of the state. Marcy v. Seminole County, 45 Okla. 1, 144 Pac. 611. Plainly, the restrictions have the same force and operate in the same way as if Congress had selected another agency, exclusively federal, such as the Superintendent of the Five Civilized Tribes."

In the case of Buck et al. v. Simpson et al., 65 Okla. 265, 166 Pac. 146, the court said:

"An application having been made under provisions of section 9. Act Cong. May 27, 1908. ch. 199. 35 Stat. 315, to the county court, having jurisdiction of the settlement of the estate of a deceased Choctaw Indian, to approve a deed by a full-blood Choctaw Indian heir of such decedent, which deed purported to grant all the estate of such Indian heir in and to the lands described therein, the

county court made findings of fact and made an order approving said deed. Said court in its findings erroneously found that such Indian heir had only a life estate in said lands. In an action by an heir of such Indian heir to recover his interest in the remainder of said lands after the death of said Indian heir, held, that the approval by the county court of said deed gave it validity and effect. and it conveyed to the grantee named therein all the estate of such Indian heir in said lands, and, the action of the county court in approving said deed not being judicial, that the findings made by the court form no part of the order of approval and may be treated as surplusage."

In our judgment the only question that can be raised in reference to the order made by the county court on October 6, 1909, is, whether such order is evidence of the fact that the court failed to pass upon and approve the deed so far as it related to the interest possessed by Mollie Tiger and Baby Cumsey in said land. The court found that they had none. If the court, in our judgment, had found that said Mollie Tiger and Baby Cumsey held and possessed some interest therein, although mistaken as to the quantity of interest, under all the acknowledged facts in the case, then this would have been a "mistake of law," and, therefore, there would be no doubt cast upon the approval of the deed as it related to the interest of Mollie Tiger and Baby Cumsey; but, in our judgment, whatever doubt may exist as to the validity of the deed approved October 6, 1909, so far as it affects the interest of Mollie Tiger and Baby Cumsey, was removed by the approval of said deed upon the part of the county court on the 5th day of November, 1914.

It was shown by the evidence in the trial court that the money received from Lozier was divided equally among the three plaintiffs. and the court found this issue in favor of the defendants.

It is true that Mollie Tiger and Baby Cumsey, at the time they filed an application for the approval of the deed, filed in said county court, on the 5th day of November, 1914, claimed that there was still due them $50 each, and it appears that this amount was paid when they filed their petition on the 5th day of November, 1914.

Having received full consideration for their portion of the land in question and being desirous of passing whatever title they possessed to said lands to defendant Lozier, we fail to find any legal impediment which would prevent the county court, as a federal agency, from formally approving the deed of

the grantors, Mollie Tiger and Baby Cumsey, which had theretofore been filed in the county court of Creek county on the 12th day of August, 1909.

In the case of W. C. Lykins and E. W. W. Lykins v. Mrs. R. McGrath, 184 U. S. 168-170, 46 L. Ed. 485, the court said:

"The plaintiffs have no equities superior to those of the purchaser. They are the heirs of the Indian grantor, and as such may rightfully claim to inherit and be secured in the possession of all that property to which he had at his death the full equitable title; but when, as shown by the approval of the Secretary, he had received full payment of a stipulated price, and that price was ample, and he had been subjected to no imposition or wrong in making the conveyance, then their claims as heirs cannot be compared in equity with those of the one who had thus bought and paid full value. They certainly do not stand in the attitude of bona fide purchasers. * * *

"As, therefore, it has been settled by Pickering v. Lomax, 145 U. S. 310, 36 L. Ed, 716, 12 Sup. Ct. Rep. 860, that approval by the Secretary may be retroactive and take effect by way of relation as of the date of the deed, and as it appears from the fact of the approval by the Secretary that the Indian grantor received full payment for his land and was in no manner imposed upon in the conveyance, and as these plaintiffs have no equitable rights superior to those of the grantee in that deed, it follows that the title conveyed by it must be upheld. The judgment of the circuit court is affirmed."

In the case of Snell et al. v. Canard et al., 95 Okla. 145, 218 Pac. 813, this court said:

"Where a deed was executed by a full-blood Indian heir in 1909 and approved by the county court of Hughes county, which was not the county court having jurisdiction of the estate of the deceased allottee, and in 1919 an order of approval was entered by the county court of Okfuskee county, which was the county court having jurisdiction to approve the same, it was not necessary that a new consideration be paid at the time of the last approval."

In the case of Hope v. Foley, 57 Okla. 513, 157 Pac. 727, after quoting section 9 of the Act of May 27, 1909, the court said:

"It will be observed that neither of the statutes above set out, authorizing the conveyance of full-blood inherited lands, prescribes as a condition precedent to the validity of a deed conveying such lands that it should only be executed upon a consideration then paid; that the provisions providing for the approval—that of 1906 by the Secretary of Interior, and that of 1908 by the county court having jurisdiction of the settlement of the estate of the deceased al-

lottee are that the approval of the particular agency named in the act is essential to the validity of the conveyance. From this fact we take it that proof of the payment of a present consideration is not essential to the validity of such conveyance, but the approval of the approving agency provided in the act renders the conveyance valid though no consideration was paid or recited in the conveyance. The title to inherited land was in the heir, and the heir had the right to convey upon approval of the approving agency. We take it that, if he gave the land away, and the proper agency approved the conveyance, the title would pass to the grantee, and the heir could not thereafter repudiate the conveyance. Sarah Henley, nee Taylor, v. Fred W. Davis et al., ante, p. 45, 156 Pac. 337; McKeever v. Carter et al., 53 Okla. 360, 157 Pac. 56. The object of requiring the approval was to place the incompetent Indian on an equal footing with the person dealing with him, presumably competent, and the purpose of the approval was to require a disinterested agency to examine into the transaction and ascertain whether or not the Indian grantor had been overreached in the trade. If the investigation convinced the approving agency that the full value of the land had been paid and received by the grantor in the deed, whether paid on the date of the execution of the conveyance, or when presented for approval, or paid at some time prior, could make no difference."

We, therefore, are of the opinion that whatever doubt might exist as to the approval of the deed of Mollie Tiger and Baby Cumsey by the county court on October 6, 1909, the subsequent approval by the county court on November 5, 1914, of their deed theretofore filed in said county court on the 12th day of August, 1909, fully and completely removed such doubt and transferred title from the grantors. Mollie Tiger and Baby Cumsey, unto Lozier, their grantee.

The remaining assignments of error are not important, and the discussion of the same could not affect the result in said cause.

The judgment of the district court is, therefore, affirmed.

BRANSON, C. J., MASON, V. C. J., and HARRISON, HUNT, CLARK, and HEFNER, JJ., concur.

Note.—See under (1) 38 Cyc. p. 1961. (2) 40 Cyc. p. 2401. (3) 31 C. J. p. 520, §92. (4) 18 C. J. pp. 218, 219, §131. (5) 18 C. J. p. 227, §146. (6) 31 C. J. p. 520, §92.