**GRAFF v. HOLLIDAY, Gdn, et al.**

No. 23677.   June 4, 1935.

Bierer & Bierer, for plaintiff in error.

McGuire & McGuire, for defendants in error.

CORN, J.  The facts in this case are substantially as follows:  William A. Henning homesteaded in 1889 on the following described property:  "The southwest quarter (S. W. ¼) of section nine (9) township seventeen (17) north, range four (4), in Logan county, Okla.," and that he and his family have resided thereon ever since.

On the 1st day of October, 1921, he, joined by his wife, Bertha Henning, gave a mortgage in the sum of $2,500 and on the 11th day of December, 1930, he, joined by

his wife, gave another mortgage on this same land in the sum of $3,350, and on September 30, 1931, they executed a contract and deed to George Graff. On the 5th day of October, Mr. Graff was notified by Mr. Henning's son, John, that his father was not competent to make a deed and that an application had been made to appoint a guardian for him.

On the 10th day of October, 1931, the county court of Logan county declared the said William A. Henning an incompetent person, and B. D. Holliday, who was appointed as guardian, joined by Bertha Henning, filed this action in the district court of Logan county on October 10, 1931, for the purpose of setting aside the contract and deed executed on the 30th of September, 1931, for the reason that at the time of the making of said contract and deed the said William A. Henning was an incompetent person and mentally incapable to transact his business, to manage his property, to make a sale contract and deed, or to transfer title to his homestead, and further pleaded fraud and undue influence.

After the issues were joined, and on the 17th day of December, 1931, the court, after hearing the evidence, made complete and exhaustive findings of fact and conclusions of law and rendered judgment in favor of the plaintiffs, setting aside said contract and deed, for the reason that at the time of the making of said contract and deed the said William A. Henning was an incompetent person and incapable of legally making a conveyance of his property. Defendant appeals. The defendant contends that the findings of fact and conclusions of law are contrary to the law and evidence in this case.

Bertha Henning's testimony is substantially as follows: That she is the wife of William A. Henning. That on the 28th of September, 1931, Mr. Graff came to their home, discussed the sale of the farm with her husband, and made a proposition to pay him $7,500 for the farm, giving him until 12 or 1 o'clock the next day to accept the offer; that if he did not accept it, Mr. Hopkins, the person holding the latter mortgage, would throw them out into the road. The next morning, she, Mr. Henning, and their son, John, went to the First National Bank at Guthrie, where Mr. Henning asked if they could renew the mortgages and was informed they were not making any renewals. That during all these transactions her husband was in a very weakened condition both mentally and physically. That afternoon between 12 and 1 o'clock, the three went to George Graff's home, where Mr. Henning and Mr. Graff had a conversation which she did not hear. Then on the 30th day of September, Mr. Graff took them in his car to Guthrie, and she and Mr. Henning signed a contract and deed to Mr. Graff; that she signed it because of the statement Mr. Graff had made the previous day that Mr. Hopkins would thrown them into the road if she did not sign it. That in signing these papers she knew that one was a contract, but did not know the other was a deed until after she had signed it.

Dr. J. L. Butler, who had been the family physician on different occasions and had known Mr. Henning for many years, testified that from the strike of apoplexy in June, 1930, Mr. Henning was affected both mentally and physically. After consciousness returned, his mental condition seemed to be very weakened, and since then he had shown no signs of recovering mentally. That on the 30th day of September, when the contract and deed were executed, he was not in a condition to transact business, had the mind of a 12 year old child and at that particular time could have been easily influenced.

There were several other witnesses for plaintiff who testified that William A. Henning's mental condition had been growing worse since that stroke in June, and that he was not in a condition to understand a business transaction at the time the deed and contract of sale were executed.

There were, also, witnesses who testified that Henning was competent to sell his land and make the contract and deed, and that he accepted Graff's proposition on his own accord and without influence.

There were witnesses who testified that this farm, which was located between the Eason oil field and the Crescent oil field, was worth from $8,000 to $18,000. Then there were some who testified that the land value should not exceed the sum of $7,000.

Considerable testimony was introduced going to the incompetency and incapacity of William A. Henning for over a year prior to the execution of the contract and deed herein involved.

This court in the case, Etchen et al. v. Texas Co. et al., 82 Okla. 62, 199 P. 212, lays down the rule that:

"Where the mental incapacity of a grant-

or is a material issue in an action to cancel a conveyance for incompetency, evidence as to his weakness of mind is not confined to the date of the conveyance, but may go to any period of his life, prior and subsequent to the conveyance."

In White et al. v. Harrigan et al., 77 Okla. 123, 186 P. 224, the court states as follows:

"Generally speaking, a misrepresentation of law affords no grounds of redress or relief on the theory that all men are supposed to know the law. It is not universally true, however, that a misrepresentation of the law is not binding upon the party who made it. Where one has superior means of information, professes a knowledge of the law, and thereby obtains an unconscionable advantage of another who is ignorant and has not been in situation to become informed, the injured party is entitled to relief as well as if the representation had been made concerning a matter of fact."

Section 9403, O. S. 1931, provides as follows:

"Person of Unsound Mind May Rescind Without Prejudice to Third Parties.

"A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission without prejudice to the rights of third persons, as provided in the article on extinction of contract."

It may be stated as settled law that where there is a great weakness of mind in a person executing a conveyance of land, arising from age, sickness, and any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, a court of equity will, upon proper and seasonable application of the injured party or his representatives or heirs, interfere and set the conveyance aside.

From an examination of the authorities we find it is not necessary, in order to entitle the plaintiffs to relief, to show that William A. Henning was at the time of the execution of the contract and deed insane or so mentaly weak that he was entirely disqualified to transact any business. It is sufficient that he was at that time incapable of understanding the nature and magnitude of the transaction, and that there was gross inadequacy of consideration for the conveyance. From these circumstances imposition or undue influence will be inferred, and they alone are sufficient to secure the aid of a court of equity.

Extreme weakness will raise an almost necessary presumption of imposition, even when it stops short of legal capacity, and though a contract in the ordinary course of things, reasonably made with such a person, might be permitted to stand, yet if it should appear to be of such a nature as that such a person could not be capable of measuring its extent or importance, its reasonableness, or value fully and fairly, it cannot be that the law is so much at variance with common sense as to uphold it.

As found by the trial court, the transaction complained of herein was tainted with imposition, over exercise of authority, and other forms of undue influence, and gross inadequacy of consideration.

As disclosed by the record, the defendant had known William A. Henning for many years, had full and complete knowledge of his incapacity and incompetency and that it was such as would lead any prudent and reasonable person to the belief that William A. Henning was and had been for some time of unsound mind and without capacity to make a valid conveyance. In this case we find a man who had continuously lived on the land in question as his home since 1889, who was more than 75 years of age, feeble in mind and body and unversed in business affairs, unless it would be the simplest of farm and manual labor, competing with his antagonist, the defendant, a man 39 years of age, fairly well to do, engaged in many forms of business and owning several farms, according to his testimony.

The record further discloses that the defendant for his own gain was making false representations to this aged man and family, that they would be immediately dispossessed of the land he had so long retained as his homestead unless the inadequate offer of $7,500 was accepted by them. From the business experience that the defendant has had, he undoubtedly knew that, under the laws of the state of Oklahoma and the terms of the mortgages, which speak for themselves, Henning and his family could not be immediately dispossessed, but would be entitled to the statutory period for pleading in the event suits for foreclosure were filed, and also to an additional six months in which the mortgages might be redeemed.

There is a sharp conflict in the evidence in this case, as to the value of the land in question, and as to the mental condition of William A. Henning at the time the contract and deed were executed. Those mat-

## 506

ters were determined by the trial court in favor of the plaintiff.

The long-established rule by this court is:

"Where a case is tried to the court and there is a conflict in the evidence on the issues joined, determination of the questions of fact therein is for the trial court, and, the Supreme Court, on appeal, will not weigh the evidence or determine as to the credibility of the witnesses, that question being one for the trial court"

—and is controlling in this case.

The findings of fact and conclusions of law by the trial court are amply sustained by the record in this case.

The judgment is, therefore, affirmed.

McNEILL, C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.