BUMPASS v. STONE et al.

No. 30438.   May 5, 1942.

*125 P. 2d 755.*

Sam Y. Colby and Gerald S. Tebbe, both of Madill, for plaintiff in error.

Jack Smith, Reuel W. Little, and Welch & Grigsby, all of Madill, for defendants in error.

PER CURIAM. Plaintiff, Sarah P. Bumpass, commenced this action against Roy J. Stone et al. to recover an interest in real property represented by a mineral deed conveyed to defendant

Roy J. Stone under date of May 22, 1939. The interests of the remaining defendants are derived from the title acquired by Roy J. Stone, and a determination of the nature of the conveyance made to the defendant Stone is determinative of all of the questions at issue.

The trial court found generally for all of the defendants, sustaining the conveyance made to Roy J. Stone by the plaintiff. Plaintiff seeks to review the order and judgment of the trial court and in seven allegations of error presents three general propositions, which are all to the effect: (1) That the conveyance being by an individual of unsound mind, the same is void; (2) that if the conveyance is not void, it was such a conveyance because of lack of consideration and the lack of understanding of the said plaintiff that equity will intervene and set aside the conveyance as to all parties who are not innocent purchasers for value.

The plaintiff on the date of the conveyance was 84 years of age. She conveyed by mineral grant deed a three-fourths interest in 40 acres described as the S.E.¼ of the S.E.¼ of section 33, twp. 5 S., range 7 E. I.M., and received therefor $210. As computed in the testimony of several witnesses, this was at the rate of $7 per acre for the royalty interest, and this computes the 40 acres involved as being a conveyance of 30 acres out of the 40 acres, leaving plaintiff 10 acres of royalty. The conveyance described the interest granted as a three-fourths interest in and to the said 40 acres. For the purpose of the opinion it seems to be conceded that the result is the same regardless of the method used to describe or determine the interest.

Several lay witnesses testified for the plaintiff and all agree that plaintiff is weak in physical condition; that her memory is bad; that she rambles in her conversation and converses at length on experiences of her former days. She has been a widow since 1898. She has three sons and two daughters. One of these sons lives with or near her. For a while she was in the Confederate Home at Ardmore, Okla. While there she was under treatment by Dr. T. J. Jackson. In August of 1939 he stated she was confined to her bed suffering from arteriosclerosis. She recovered enough to go home; the doctor states that she has the mind of a child seven or eight years old. A like statement is made by all of the witnesses testifying for the plaintiff as to her mental condition. The doctor further testified that the mental condition at the time of his testimony, considering the history, was the same as at the time of the conveyance. Plaintiff herself testified. She told in detail of the execution of the conveyance. She described how she had formerly executed an oil and gas lease for 20 years on the premises, and related how the son had suggested that ten acres in addition to the 20 acres first requested by the defendant Roy J. Stone be added to the conveyance. She stated that at his suggestion she agreed that the conveyance should be changed from 20 acres to 30 acres. Roy J. Stone testified that when this agreement was reached the three-fourths interest was then changed in pencil, whereupon it was agreed that it might be changed in typewriting at a later date, and that this was done.

We cannot say that this state of facts reveals a situation authorizing us to determine as a matter of law that the findings of the trial court are clearly against the weight of the evidence. Plaintiff cites and relies on Graff v. Holliday, 172 Okla. 503, 45 P. 2d 1065, which was cited and quoted in the recent case of Powell v. Hughes, 189 Okla. 241, 116 P. 2d 896.

In Graff v. Holliday, supra, a conveyance by the owner, an elderly person weakened physically and mentally by apoplexy, was set aside by the trial court. The consideration was $7,500 and it was alleged that there had been an overreaching by the purchaser, who stated that the owner would be set out in the road because of a default in the mortgage indebtedness on the premises approximating $5,500. Although wit-

nesses in that case testified the land was valued as low as $7,000, a majority of witnesses fixed the value at the sum of $8,000 to $18,000. This court affirmed the trial court. Therein it is stated that it is settled law that where there is a great weakness of mind in a person executing a conveyance of land, arising from age, sickness, and any other cause, though not amounting to absolute disqualification, and the consideration given for the property is grossly inadequate, a court of equity will, upon proper and seasonable application of the injured party, or his representatives or heirs, interfere and set the conveyance aside. In Powell v. Hughes, supra, despite testimony to the contrary, two physicians stated that the owner in question was, in their opinion, incapable of any understanding. One of these physicians had had repeated opportunity to observe and attempt to converse with the former owner. The fact situation in Powell v. Hughes, supra, is quite dissimilar to that in the case at bar. Aside from the blindness and general debility due to age, there is no evidence of sickness prior to August, 1939, at which time Dr. Jackson testified plaintiff was confined to her bed. The conveyance was made in May, 1939. Several witnesses testified that royalties in and around the neighborhood and locality were selling from $5 to $10 per acre, and some was described as having been sold for $1 per acre. The proof is far from satisfactory as to gross inadequacy. Several witnesses testified that $5 per acre in that locality was a fair and reasonable value. At least one son suggested that plaintiff sell ten more acres at the price of $7. The claim that the plaintiff did not know that she was disposing of the royalty interest is hardly sustained or established. The testimony of plaintiff reveals that she knew that she had leased the premises for oil for a period of 20 years, and that she knew what an oil lease was, and in our opinion she stated quite clearly the whole transaction relating to the sale of royalty, including the suggestion made by her son that they sell 30 acres instead of

20. In Scott v. Scott, 131 Okla. 144, 268 P. 245, it is stated:

"The test of capacity to make a deed is that the grantor should have the ability to understand the nature and effect of the act in which he is engaged, and the business he is transacting. He may be old; he may be enfeebled by disease; he may be erratic, irritable, and changeable in his views; he even may be irrational upon some topics, but, in the absence of fraud, he may still execute a valid deed."

See, to the same effect, Miller v. Folsom, 49 Okla. 74, 149 P. 1185, and Tiger v. Lozier, 124 Okla. 260, 256 P. 727.

It is a well-known rule of law requiring little citation of authority that this court will review the evidence in a case of equitable cognizance, but will not reverse the trial court in its finding unless such finding is against the clear weight of the evidence. Stevens v. Iverson, 179 Okla. 401, 66 P. 2d 12; Graff v. Holliday, supra.

The judgment of the trial court is affirmed.

WELCH, C.J., and OSBORN, BAYLESS, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. CORN, V.C.J., and RILEY, J., absent.