RAPER et al. v. THORN.

No. 33753. Oct. 4, 1949.

Rehearing Denied Nov. 29, 1949.

*211 P. 2d 1007.*

Geo. C. Crump and Tom Smith, both of Wewoka, for plaintiffs in error.

Allen G. Nichols and Walter Billingsley, both of Wewoka, for defendant in error.

GIBSON, J. This action was instituted by defendant in error against plaintiffs in error to be decreed the equitable owner of a tract of 40 acres of land, the legal title to which was vested in plaintiffs in error, and for other relief. Upon trial to the court plaintiff was awarded judgment as prayed, and defendants appeal.

The material facts are substantially as follows:

Plaintiff, James E. Thorn, and defendant Grover C. Raper for years had owned and occupied farms in the same neighborhood and were warm friends. Between their farms and abutting each lay a tract of 120 acres of land consisting of three 40-acre tracts owned by others. The intervening tract was advertised for public sale in pursuance of a decree of partition. It was orally agreed between them to purchase the entire tract, said defendant to own two of the 40's and the plaintiff the other, and that defendant was to attend and purchase the entire tract and convey to plaintiff the 40 designated to be his. Considering it necessary that the agreement be in writing, they repaired to the office of one Jess Green, president of the First National Bank of Maud, Oklahoma, with whom both did their banking business, and requested him to put the agreement in writing. They were advised by Green that their oral agreement was good and therefore a writing not needed. While at the bank plaintiff offered to give to defendant a check with the amount thereof left blank and to be filled in by the latter for the proper proportion of the purchase price. Defendant declined to accept the check, saying there was no use to give the check until the purchase was made. Plaintiff, relying upon defendant's promise to bid on the land in the interest of both, did not attend the sale but send O. H. Presson, an attorney, to attend the sale and take care of any legal matters that might arise in connection with defendant's buying of the land and to bid thereon only in event the highest bid defendant was willing to make was insufficient to secure the purchase. At the sale it was agreed between defendant and Presson that defendant would signal Presson when defendant decided to quit bidding, and that thereupon Presson would be at liberty to purchase the entire tract for plaintiff. Defendant made the successful bid and was declared the purchaser. Thereupon Presson prepared a deed to be executed by defendant to plaintiff conveying the agreed 40 acres, and offered to fill in the amount of the agreed proportion of the purchase price and deliver to defendant check signed by plaintiff and held by Presson for the purpose. He was advised by defendant to wait until the sale was confirmed. On learning of the confirmation Presson went to the home of defendant to close the matter and was advised by him they would have to take the matter up with Clarence, meaning defendant Clarence Raper, son of said defendant, to whom and his wife, defendant Mae I. Raper, said defendant had conveyed the entire 120 acres. A meeting was had and thereat both Grover and Clarence Raper refused to make the conveyance. The conveyance to Clarence Raper and Mae I. Raper was made without consideration and the grantee, Clarence Raper, who attended the sale, was fully conversant with the agreement between plaintiff and Grover C. Raper. As reason for his refusal to carry out the agreement Grover C. Raper advised Presson that he considered the contract to be unenforceable, that he needed the land himself, and would neither convey nor have Clarence Raper convey to plaintiff any part of it. Following such refusal plaintiff instituted this action. The only conflict in the evidence arose between the testimony of Grover C. Raper and that of

said O. H. Presson. Raper testified that at the sale, and before the bidding began, he advised Presson that he had been informed and believed that the agreement was illegal and if pursued might vitiate the sale and for that reason he would not recognize the agreement as binding and would act independently thereof. Presson testified that no such statement was made and that, on the contrary, Raper expressly recognized the existence of the agreement; represented that he was bidding in pursuance thereof, and at no time gave any evidence that same was in question until after his refusal to make the deed. Touching this conflict the court found that in such conversation both Grover C. Raper and Clarence Raper, who was present, reaffirmed the existence of said oral agreement, and such finding is supported by the evidence.

The court found the issues for plaintiff, and adjudged that defendants held the title to the 40-acre tract as trustees for plaintiff, and were in duty bound to convey same to plaintiff in consideration of plaintiff's tender into court and that in default thereof the decree to operate to convey the title thereto to plaintiff, and quieted plaintiff's title thereto.

For reversal there are presented two propositions which are as follows:

(1) The agreement being oral is within the statute of frauds and therefore unenforceable.

(2) The agreement was in violation of public policy and therefore not enforceable.

Pertinent to the consideration of these propositions are the following findings of the Court:

"The Court finds from the evidence in the case that a fiduciary relationship was established between the parties and that said G. C. Raper was to appear at said sale and buy same as the agent, partner and trustee of this plaintiff.

" . . .

"The Court finds that the plaintiff relied on the promises, representations and agreement made by the defendant, G. C. Raper, and took no further steps to protect his interest and relied wholly and entirely upon the agreement with the defendant in this case.

"The Court finds from all the evidence in this case that the defendants purchased said land as the agents, partners and trustees of plaintiff, and that the defendants have failed to keep their agreement and have practiced fraud and deceit upon the plaintiff and that by reason of said fraud and deceit, defendants should be adjudged to hold said property in trust for said plaintiff."

And the court further found that by reason of the deceit and fraud practiced, the plaintiff was prevented from protecting his interest or buying said land and was injured because of the fraud and deceit so practiced.

The agreement of defendant to purchase and thereafter convey to plaintiff a part of the land, considered independently of the accompanying circumstances, would afford plaintiff no basis for relief. Such is true because his right to relief would depend upon the agreement which being oral could not be enforced by reason of the statute of frauds (Bingham v. Worley, 194 Okla. 238, 149 P. 2d 253) nor give rise to an express trust (Tit. 60 O.S. 1941 §§171, 172).

But, considered in connection with such circumstances, we deem it evident that the plaintiff is entitled to relief because the effect thereof is to establish a constructive trust in the land involved that becomes enforceable by operation of law. In Restatement of the Law, Restitution, p. 795, sec. 194, there is the following statement:

"(1) A fiduciary who purchases from a third person for himself individually property which it is his duty to purchase for the beneficiary holds it upon a constructive trust for the beneficiary.

"(2) A person who agrees with another to purchase property on behalf of the other and purchases the prop-

erty for himself individually holds it upon a constructive trust for the other, even though he is not under a duty to purchase the property for the other."

The first paragraph has reference to situations where there obtains a duty under pre-existing fiduciary relations and therefore not pertinent here.

In elaboration of the second paragraph, which is material here, there is declared:

"Comment on Subsection (2):

"d. Where a person undertakes as fiduciary to acquire property. The rule stated in Subsection (2) is applicable where a person undertakes as fiduciary to purchase property and purchases it for himself, even though he would be under no liability for failing to acquire it for the beneficiary if he did not acquire it for himself. This is true whether or not there is a pre-existing fiduciary relation between the parties. Thus, it is applicable where one person gratuitously and orally undertakes to purchase land on behalf of another. In such a case he is under no liability if he fails to acquire the property, since there is no consideration for his undertaking and no other circumstances imposing upon him a duty to acquire the property. If, however, in violation of his undertaking as fiduciary he acquires the property for himself, he holds it upon a constructive trust for the person for whom he undertook to acquire it.

"Where one person orally undertakes to purchase land on behalf of another, it may be urged that the other cannot enforce a constructive trust because the undertaking is oral and there is no compliance with the provisions of the statute of frauds. The answer to this objection is that the other is not enforcing an oral contract, but is enforcing a constructive trust based upon the violation of fiduciary duty. The undertaking to act for the other is sufficient to constitute the relation of principal and agent between them. The relation arises although no consideration is paid or agreed to be paid by the principal to the agent; and the relation may arise although its creation is not evidenced by a written instrument, even though the agent is to purchase land for his principal. It is sufficient to create the relation that the one authorizes the other to act for him in making the purchase and the other undertakes to do so. If the agent purchases for himself the property which he has undertaken to purchase for his principal, he holds the property so purchased upon a constructive trust for his principal.

"The rule is applicable not only where a person is employed professionally to purchase the property for the employer, as in the case of a real estate broker, but also where a person gratuitously agrees to purchase the property on behalf of another.

"The rule stated in this Section is applicable where one person agrees to purchase property on behalf of another, whether he undertakes to purchase it in the name of the other, or in his own name, or in their joint names."

The principles so announced have received full recognition in this state.

In Powell v. Adler, 69 Okla. 291, 172 P. 55, we held:

"Where one assumes to act as the agent of another in the purchase of real estate, and by the terms of a parol agreement between them the agent is to pay for the same with his own money and cause the property to be conveyed to his principal, but in violation of his agreement causes the same to be conveyed to himself and refuses to convey the property to his principal, an action may be maintained in equity to compel him to do so, and the same is not within the statute of frauds."

There is further declared in the opinion:

". . . if the trust is betrayed to gain a private advantage, equity will declare a constructive trust, for the question is not what position the one guilty of bad faith held, or by what name it was called, but did he violate his fiduciary relation to the corporation, and its confidence imposed in him? If he did, a constructive trust is declared in favor of the one whose confidence is violated."

In Cassidy v. Hornor, 86 Okla. 220, 208 P. 775, we held:

"2. Where one party to a joint adventure obtains the title to property, not only by fraud or by violation of confidence or of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by imposing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner thereof, or of an interest therein.

"3. Where property is acquired as a joint venture, it is not material in whose name the title is taken, as the one holding the title will be regarded as trustee for his associates; * * *"

It is further said in the opinion:

"When Cassidy refused to deliver to Hornor his proportionate share of the stock obtained for the leases, he thereby violated the fiduciary obligation resting upon him which required the utmost good faith in his dealings with his co-adventurer, and cannot equitably retain the fruits of the joint adventure and deprive Hornor of the share thereof which rightfully belongs to him, and a court of equity will grant relief by requiring the issuing of the stock to the true owner."

And we held in McCaleb v. McKinley, 80 Okla. 38, 194 P. 105, as follows:

" . . . although a simple avowal of acquisition for the use of another, whether made contemporaneous with or subsequent to the fact, will not of itself support an allegation of trust, yet it is equally well settled that if one be induced to confide in the promise of another that he will hold in trust, or that he will so purchase for one or both, and is thus led to do what otherwise he would have forborne or to forbear what he contemplated to do in the acquisition of an estate whereby the promisor becomes the holder of the legal title, an attempted denial of the confidence is such a fraud as will operate to convert the purchaser into a trustee ex maleficio."

We think that the evidence clearly establishes a constructive trust and, therefore, there was no error in the court so holding.

In support of the second proposition it is urged that the agreement between the parties, being designed and calculated to stifle competition at a judicial sale, was void because against public policy, and therefore could give rise to no right or liability between the parties thereto, and there is cited an early Illinois case, Loyd v. Malone, 23 Ill. 43, 74 Am. Dec. 179, that tends to lend support thereto. We think that the doctrine of that case, to the extent it would condemn the agreement in the instant case, is not in accord with the doctrine that now obtains generally and which is recognized in this state. We deem pertinent and correct the following, quoted with approval in Spokane Savings & Loan Soc. v. Park Vista Improvement Co., 160 Wash. 12, 294 P. 1028, 1035, from a New York court:

" 'The early rule of law condemned without discrimination all agreements between persons not to bid at judicial or public sales. This rule has, however, been modified, and it is now well settled in this state that, where such agreements are made for an honest purpose, and designed to protect existing interests, they are valid. . . .' "

Expressive of the modern rule there is declared in 2 R. C. L. 1133:

" . . . While the rights of the vendor and others interested in the property are to be protected, nevertheless prospective purchasers have the right to consult and promote their own interests so long as they do not resort to any fraudulent artifice for that purpose."

And in 50 C. J. S., p. 609, §22, as follows:

" . . . An agreement between two or more to purchase property together as a common enterprise is not fraudulent and is not within the prohibition against combinations having for their object the prevention of competition."

And to same effect see, further, 17 C. J. S., p. 598, §226, and 6 R. C. L. §811.

In our opinion the law is aptly stated in Venner v. Denver Union Water Co., 40 Colo. 212, 90 P. 623, 632:

"The test to apply in determining the validity of a combination of the kind under consideration is the end intended to be thereby accomplished. If it is to depress the price of the property to be sold, and prevent competitive bidding at the sale, it is illegal; but if its purpose is to raise the means of payment by contribution, or to divide the property for the accommodation of the purchasers, it is valid. The fact that an agreement to make a joint purchase may indirectly operate to prevent the parties thereto from bidding is not enough to render the transaction unlawful. To have that effect it must appear that the object of the agreement was to avoid competition."

Measured by these rules, it is clear that the agreement is not contrary to public policy.

Affirmed.

DAVISON, C. J., ARNOLD, V. C. J., and CORN, HALLEY, JOHNSON, and O'NEAL, JJ., concur. WELCH and LUTTRELL, JJ., dissent.