Herschul B. GOLDSBY and Martha S. Goldsby, Plaintiffs in Error,

v.

Rudolph JURICEK, an Incompetent person, and Frank Juricek, as Guardian of the Person and Estate of Rudolph Juricek, an incompetent person, Defendants in Error.

No. 40685.

Supreme Court of Oklahoma.

June 22, 1965.

Purman Wilson, Purcell, Person Woodall, Norman, Val R. Miller, Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, for plaintiffs in error.

Ben Huey, Luttrell, Luttrell, Pendarvis & Livingston, Norman, for defendants in error.

DAVISON, Justice.

Herschul B. Goldsby and Martha S. Goldsby, husband and wife (plaintiffs below) appeal from a judgment in favor of Rudolph Juricek, an incompetent, and Frank Juricek, his guardian (defendants below) wherein the lower court denied plaintiffs' action to cancel a certain mineral deed. Trial was to the court. Herschul B. Goldsby will be referred to as "Goldsby" and otherwise the parties will be referred to by name or by their trial court designation. Plaintiffs' action was to cancel, on the grounds of duress and lack of consideration, a mineral deed wherein they conveyed to Rudolph Juricek a mineral interest in lands located in Cleveland County, Oklahoma.

The circumstances causing the controversy were that on April 21, 1960, the County Court of Cleveland County, Oklahoma entered an order in the guardianship proceedings of the said Rudolph Juricek, an incompetent, authorizing the guardian to sell, at private sale, the incompetent's undivided ¼ interest in the Northeast Quarter of Sec. 18, Township 10 North, Range 2 West, I. M., Cleveland County, Oklahoma, less and except ⅛ of the minerals which had been previously conveyed. On May 13, 1960, one, Harry E. Bray became the purchaser on a bid of $16,600, subject to confirmation by the County Court. The hearing on the

confirmation of the sale was set for May 24, 1960, at 10:00 A.M. before the County Court.

It is undisputed that on and prior to May 24, 1960, Harry E. Bray had acquired title to an undivided ¾ interest in the surface of the same land and ¾ of the ⅞ of the minerals therein.

At the time (May 24, 1960, at 10 A.M.) set for hearing the confirmation, Goldsby appeared and submitted a bid of $18,260, which was 10% more than the prior bid made by Bray. The attorney for Bray asked that the hearing be continued until 2:00 P.M. and the County Court so ordered. Later that morning, the attorney for Bray talked to Goldsby and as a result thereof Goldsby agreed to withdraw his bid and the attorney offered to give him a mineral deed (from Bray) for an undivided ³⁰⁄₁₆₀ of ⅞ of the oil, gas and other minerals in the above described quarter section. A short time before the hour of 2:00 P.M. Goldsby withdrew his bid, with the consent of the County Judge, and the attorney for Bray delivered to Goldsby the mineral deed above described and he (Goldsby) immediately filed the instrument of record. Goldsby admitted he paid no monetary consideration for the mineral deed. The County Judge confirmed the sale to Bray and a guardian's deed was executed and delivered to him.

Later, that same afternoon, the County Judge learned of the filing of the mineral deed from Bray to Goldsby and asked Goldsby to come to his office in the court house. The ensuing conversation took place in the presence of an assistant county attorney. Goldsby testified the county judge informed him that he had subjected himself to two years in the State Penitentiary for interfering with the court; that he (Goldsby) said: "What do I do now?;" the judge said he should sign a deed conveying to Rudolph Juricek the minerals he had received from Bray; that in the next two or three days he and his wife executed a ready prepared deed in the office of the court clerk to that effect; and that such deed was only given under duress exerted by the judge.

The County Judge testified Goldsby stated he had not paid anything for the minerals and he then told Goldsby that he (the Judge) had not checked the statutes but there might be a criminal violation and that if Goldsby wanted to deed the minerals back to the incompetent, "that as far as I was concerned there would be nothing further said about it." The then Assistant County Attorney testified the Judge questioned Goldsby about receiving the minerals and told Goldsby this was wrong, and when Goldsby inquired what he should do, the Judge advised him to deed the minerals "back to them;" and that he did not remember any word of "criminal law or criminal prosecution being used."

The plaintiffs' action seeks to cancel this deed as being executed and given under duress and without consideration.

In considering the validity of the judgment of the lower court the action and the evidence must be viewed in the light of the following established principles of law.

█ A suit for rescission and cancellation of a mineral deed instrument is an action of equitable cognizance, and is governed by principles of equity. Berland's, Inc. of Tulsa v. Northside Village Shopping Center, Inc., Okl., 378 P.2d 860; State ex rel. Commissioners of Land Office v. Cities Services Oil Company, Okl., 317 P.2d 722.

█ In Berland's Inc. of Tulsa v. Northside Village Shopping Center, Inc., supra, it is stated:

"In actions of equitable cognizance this Court will examine the entire record and weigh the evidence, but unless the judgment rendered is clearly against the weight of the evidence it will not be disturbed on appeal."

From all that appears in the record we may assume that the bid presented by Goldsby was made by him in good faith. However, having become a bidder in the guardianship sale proceeding, it was incumbent on him to not become a party to a plan that violated the obligations of a bidder at judicial sales. Plaintiffs emphasize testimony

of Goldsby that he was ignorant and not familiar with judicial sales and real estate descriptions and that he withdrew his bid when he learned from the attorney for Bray that he was bidding on an undivided one-fourth interest in the tract, rather than a separate 40 acre area in the 160 acre quarter section of land. Obviously the trial court did not believe Goldsby withdrew his bid solely for these reasons, nor that the conveyance of a substantial mineral interest to him from Bray was not the consideration for the withdrawal of the bid. The court made no findings of fact or conclusions of law. From our reading of the record we think the only plausible explanation is that the exchange was pursuant to mutual agreement.

■ Under the provisions of 58 O.S. 1961, § 426, the presentation of Goldsby's bid of 10% more than the Bray bid opened the matter for further bids, and the county court in its discretion could accept such offer and confirm the sale or order a new sale. Authorities relative to validity of agreements between bidders are applicable in determining this appeal.

■ A judicial sale should be so conducted as to secure the best price that can fairly be had for the property sold, and to that end, full, free, and fair competition should be secured. 30 Am.Jur. Judicial Sales, Sec. 98.

In 17 C.J.S. Contracts § 226, p. 1062, 1063, it is stated:

"While as a general rule agreements not to bid at a judicial, execution, foreclosure, or other public sale, or to prevent competition in any way at such a sale are illegal, this is not always so, since the mere fact that the agreement lessens competition is not in itself sufficient to make it invalid. Courts look more to the intent of the parties in making such agreements rather than solely to the practical consequences which follow."

In this connection the plaintiffs urge that the agreement, if any, between Bray and Goldsby was at most a transaction by which Bray was protecting his previously acquired interest in the property. We fail to see how this contention lends any support to plaintiff's action, because Goldsby had not yet acquired any interest in the property to protect. Also it was not an arrangement made before the property was offered for sale, where one would bid and both would have some interest in the property acquired at the sale. The intent of the transaction was to avoid competition by inducing the withdrawal of a higher bid.

■ The above distinction is expressed in Raper v. Thorn, 202 Okl. 235, 211 P.2d 1007, 1011, 14 A.L.R.2d 1260. In that case two landowners were interested in acquiring parts of adjoining property that was being offered at public auction in a partition action. They agreed that one would bid and the other would abstain from bidding, and the land thus acquired to be divided between them. In sustaining the legality of the agreement we recognized the distinction between lawful and unlawful agreements of this nature and cited with approval the following statement of law:

" 'The test to apply in determining the validity of a combination of the kind under consideration is the end intended to be thereby accomplished. If it is to depress the price of the property to be sold, and prevent competitive bidding at the sale, it is illegal; but if its purpose is to raise the means of payment by contribution, or to divide the property for the accommodation of the purchasers, it is valid. The fact that an agreement to make a joint purchase may indirectly operate to prevent the parties thereto from bidding is not enough to render the transaction unlawful. To have that effect it must appear that the object of the agreement was to avoid competition.' "

The object of the transaction between Goldsby and Bray was to depress the sale price of the property to be sold and avoid competitive bidding at the sale. The agreement was tainted with unlawfulness.

458

This brings us to the proposition of whether the doctrine of constructive trust is applicable in favor of the incompetent.

Goldsby testified he made the bid in good faith and that he had made arrangements for the money to complete the purchase. Part of his testimony was that he was bidding on the "percentage" that was for sale. There is sufficient evidence that in the absence of his agreement with Bray he would have completed the purchase in accordance with his bid. By reason of the agreement Goldsby wrongfully received the interest in the minerals, and the defendant incompetent received $1660 less for his interest in the land than Goldsby offered to pay. Furthermore, from the facts and admitted close proximity in time of the delivery of the mineral deed to Goldsby, the withdrawal of the bid, and the confirmation of the sale to Bray, the only credible conclusion is that the conveyance to Goldsby was contingent upon Bray acquiring the incompetent's interest in the land by the County Court confirming the sale to Bray.

In Davis v. National Bank of Tulsa, Okl., 353 P.2d 482, 488, we cited 54 Am. Jur. Trusts, Sec. 218, for the following definition of a constructive trust:

> "A constructive trust, or, as it is frequently called, a trust ex maleficio, ex delicto, a trust de son tort, or an involuntary or implied trust is a trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy."

In 54 Am.Jur. Trusts, Sec. 219, it is stated:

> "A constructive trust is substantially an appropriate remedy against unjust enrichment. * * *"

It is our conclusion, under all of the present circumstances, that by equity a constructive trust arose in favor of the defendant incompetent as to the mineral interest received by Goldsby for his participation in the unlawful transaction to depress the sale price and avoid competitive bidding.

Our disposition of this matter renders it unnecessary to determine plaintiffs' contention as to the invalidity of the mineral deed from Goldsby to the defendant incompetent for the reason that Goldsby held such minerals as trustee and the defendant incompetent was rightly entitled to the same.

The judgment of the lower court is not clearly against the weight of the evidence.

Affirmed.

HALLEY, C. J., JACKSON, V. C. J., and WILLIAMS, BLACKBIRD, IRWIN, BERRY and HODGES, JJ., concur.