**John C. ROBERTSON, Legal Guardian of the Person and Estate of Mamie L. Robertson, Appellant,**

v.

**Shirley J. ROBERTSON, Individually and as Administratrix of the Estate of John Phillip Robertson, Deceased, Appellee.**

No. 55159.

Supreme Court of Oklahoma.

Sept. 28, 1982.

Rehearing Denied Dec. 13, 1982.

J. Kenton Francy, Ira L. Edwards, Jr., Jones, Francy, Doris, Sutton & Edwards, Inc., Tulsa, for appellant.

John W. Taber, Taber & Fowler, Chandler, for appellee.

LAVENDER, Justice:

Plaintiff appeals from an order dismissing his action after the trial court sustained a demurrer to plaintiff's evidence at a trial in the district court without a jury.

Plaintiff brought the action as the legal guardian of the person and estate of Mamie L. Robertson, his 78-year-old grandmother (Mamie), who was in a nursing home, seeking to impose a constructive trust upon a 20-acre tract of land formerly owned by Mamie and for an accounting of the property and money which plaintiff's father, John Phillip Robertson, handled and managed for Mamie. The action was brought against Shirley J. Robertson (Shirley) who is the widow of John Phillip Robertson, the action being brought against Shirley individually and as Administratrix of the estate of John Phillip Robertson, deceased.

The following facts are revealed by the undisputed evidence:

Mamie was the widow and sole beneficiary under the will of Dr. Charles W. Rob-

ertson who died on October 22, 1967, leaving an estate consisting of the 20-acre tract, other real property, and two life insurance policies of which Mamie was the beneficiary.

On April 21, 1970, Mamie was admitted to St. Anthony's Hospital in Oklahoma City where she was transferred to the psychiatric ward under the care of Dr. Armstrong, a psychiatrist, who diagnosed her condition as involutional depressive and acutely psychotic. After treatment, which included eight sessions of electric shock therapy, her condition improved and she was released from the hospital on or about July 1, 1970.

On July 22, 1970, Mamie was readmitted to St. Anthony's where she remained for approximately two months, receiving continued medical and psychiatric examination and therapy, including group psychotherapy, individual therapy, and electric shock treatments under Dr. Armstrong's care. She was discharged on September 14, 1970. Dr. Armstrong again saw Mamie in his office on September 23, 1970.

On September 26, 1970, Mamie executed a general power of attorney in favor of her son, John Phillip Robertson, for the expressed purpose of said property being used for Mamie's personal needs, support, maintenance, medical attention, and care. The power of attorney was recorded on October 1, 1970.

On the same date, Mamie executed a warranty deed in favor of her son, conveying the 20-acre tract without consideration. The deed was recorded on September 28, 1970.

Thereafter, through a series of transactions by means of the power of attorney, John Phillip Robertson transferred the bulk of Mamie's assets to himself and defendant as joint tenants, or to third persons for his own personal benefit.

John Phillip Robertson and defendant were married on April 6, 1974.

On April 22, 1976, John Phillip Robertson conveyed the 20-acre tract to himself and to defendant in joint tenancy. The deed was recorded on April 22, 1976.

On May 3, 1976, John Phillip and the defendant mortgaged the 20-acre tract to a bank for $25,000, which mortgage was recorded on May 10, 1976.

The evidence is undisputed that defendant had no knowledge of Mamie's interest in the transferred assets save and except for the 20-acre transfer.

On February 16, 1978, John Phillip died intestate, and, thereafter, defendant was issued Letters of Administration in the probate of his estate.

Following the death of his father, plaintiff began caring for Mamie, was duly appointed guardian of Mamie's person and estate, and on May 19, 1978, filed a creditor's claim in his father's estate proceedings to recover the real and personal property previously owned by Mamie. Defendant, as Administratrix, took no action with respect to the claim.

On September 15, 1978, Mamie filed this action in her own name.

On February 20, 1979, pursuant to proceedings for the appointment of a guardian for Mamie, the district court determined that Mamie was then suffering from chronic organic brain syndrome, arteriosclerotic heart disease with congestive heart failure, and degenerative joint disease, that she was confused, irrational, and unable to handle any of her own business or financial affairs, and appointed plaintiff as the guardian of her person and estate. By leave of court entered on April 26, 1979, plaintiff was substituted for Mamie as plaintiff in this cause and has maintained this action since that date.

## I. WAS MAMIE L. ROBERTSON COMPETENT ON THE 26TH DAY OF SEPTEMBER, 1970, TO EXECUTE AND DELIVER THE POWER OF ATTORNEY AND DEED TO HER SON?

### TESTIMONY OF APPELLANT:

Mamie's husband, grandfather of Appellant, died in October 1967, when Appellant was about twelve years old. Mamie contin-

ued to live in the family home for approximately two months and was thereafter placed in a nursing home, because she wouldn't take care of herself properly. She didn't feed herself and was unable to take care of herself. Appellant visited her at two week intervals. Mamie would confuse Appellant with her son, did not accept the fact that her husband was dead, "and she just kind of blocked everything out."

After spending a year in a nursing home in Chandler, she was removed to a nursing home in Edmond where she remained for a year or two. While in Edmond, Appellant visited with Mamie "every once in a while."

Appellant expressed the opinion that during this period Mamie was not capable of managing her own affairs. After Mamie was removed to Edmond, her condition was unchanged. She might know one minute who she was talking to and the next minute would not. She did not carry on conversations and was rambling in her answers to questions.

Mamie's son died in February 1978, after which time Mamie's condition remained the same.

TESTIMONY OF NOLEN L. ARMSTRONG, M.D.:

Dr. Armstrong, a specialist in psychiatry, treated Mamie upon her entry at St. Anthony's Hospital on April 21, 1970. He testified: "She was in a state of severe depression and was actually psychotic at the time, which means that she was not aware really of what was going on, she was very confused and out of touch with reality.... She had had a very poor state of nutrition. She had had a severe bout of the flu and she was quite delusional and confused." She was given eight electric shock treatments and became considerably improved. After about four or six weeks, she had three home visits. At that time, she was diagnosed as involutional depression and acute psychotic condition. She also had cerebral arteriosclerosis, fairly severe, which would involve an organic brain damage or syndrome. She was discharged from the hospital on June 7, 1970.

On July 22, 1970, she was readmitted to the hospital and discharged on September 14, 1970. She had become more depressed and unable to eat and unable to care for herself. She was disoriented and withdrawn and really unable to take part in activity again. She received four additional shock treatments, and improved some, "but the memory loss was so marked that these were discontinued and she was continued to be treated on a general supportive, nutritional and psychotherapeutic basis for the rest of the time she was in the hospital. The cerebral arteriosclerosis was still the same and there was a nutritional deficiency that was improved."

Dr. Armstrong last saw Mamie in his office on September 23, 1970. His diagnosis had not changed, though she was maintaining her ability to control herself to some degree. Dr. Armstrong expressed the opinion that at that time she was not mentally competent, that she was unable to think in a logical understanding way in which she would need to be able to take care of business affairs and that sort of thing. She did have the ability to know and understand the nature of her property, but "she was not able to be capable of really understanding what it was about."

Based upon the foregoing, Dr. Armstrong was of the opinion Mamie's condition would be the same on September 26, 1970, and "that she would not be competent to handle business affairs or to understand what she was dealing with."

When asked whether she had lucid periods, Dr. Armstrong replied: "Well, there were times when she appeared to be. However, this was hard to determine. She had the brain damage that was present. It was very apparent. From the eye grounds examination you could see the arteriosclerosis in the eye, the background. It was present all through her system and with this kind of a breakdown she became paranoid, suspicious, fearful, withdrawn and this basic condition was there. It really doesn't change much, except she is more easy to manage with the treatment."

The pertinent Oklahoma Statutes are as follows:

15 O.S.1981, § 11. "All persons are capable of contracting, except minors, persons of unsound mind, * * *."

15 O.S.1981, § 16. "Persons of unsound mind within the meaning of this chapter are idiots, lunatics, and imbeciles."

15 O.S.1981, § 22. "A person entirely without understanding has no power to make a contract of any kind, but he is liable for the reasonable value of things furnished to him necessary to his support or the support of his family."

15 O.S.1981, § 23. "A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to recission without prejudice to the rights of third persons, as provided in the article on extinction of contracts."

15 O.S.1981, § 24. "After his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract, nor designate any power, nor waive any right, until his restoration to capacity is judicially determined. But if actually restored to capacity, he may make a will, though his restoration is not thus determined."

■ There is a presumption favoring sanity, and where an alleged gift, conveyance or power of attorney is given at a time when the donor or grantor has not been judicially adjudged incompetent, the burden of proof rests upon the person alleging incapacity to establish it by a preponderance of the evidence or by clear, satisfactory, and convincing evidence.[1]

In the early case of *Loman v. Paullin*,[2] this Court quoted with approval from Pomeroy's Equity Jurisprudence, Vol. 2, at § 947:

"It is equally certain that mere weak-mindedness, whether natural or produced by old age, sickness, or other infirmity unaccompanied by any other inequitable incidents, *if the person has sufficient intelligence to understand the nature of the transaction, and is left to act upon his own free will, is not a sufficient ground to defeat the enforcement of an executory contract, or to set aside an executed agreement or conveyance.*" (Emphasis supplied.)[3]

■ The evidence thus adduced is clear, satisfactory and convincing that Mamie was not legally competent to make a gift, to execute a conveyance or grant a power of attorney on the 26th day of September, 1970. The trial court erred when it sustained the defendant's demurrer and dismissed plaintiff's action.

## II. WAS IT ERROR FOR THE TRIAL COURT TO DENY PLAINTIFF'S APPLICATION TO AMEND THE PETITION DURING THE TRIAL ON THE ISSUE OF MAMIE'S COMPETENCY?

The trial court permitted the introduction of evidence relating to Mamie's competency only to the extent that the same related to the fiduciary relationship existing between Mamie and her son, the trial court being of the view that if she were incompetent the son's fiduciary duty toward her would have been higher.

It is conceded that plaintiff below did not plead lack of competency, but sought to amend at trial to permit that issue to be raised. The record discloses that defendant was aware that plaintiff was raising the competency issue a month before the trial and that the issue was no surprise to defendant and there was no showing that the defense would have been prejudiced by the

---

1. *McSpadden v. Mahoney*, Okl., 431 P.2d 432 (436) (1967); *Metropolitan Life Ins. Co. v. Plunkett*, 129 Okl. 292, 264 P. 827 (1928); *Keenan v. Scott*, 99 Okl. 63, 225 P. 906 (1924); *Tate v. Murphy*, 202 Okl. 671, 217 P.2d 177 (1950), 18 ALR 2d 892 (1950).

2. 51 Okl. 294, 152 P. 73 (1915).

3. Substantially to the same effect see: *Bumpass v. Stone*, 190 Okl. 486, 125 P.2d 755 (1942); *Anselman v. Oklahoma City University*, 197 Okl. 529, 172 P.2d 782 (1946); *Peerson v. Condon*, 199 Okl. 134, 184 P.2d 785 (1947); *McSpadden v. Mahoney, supra; Martin v. Wagner*, 198 Okl. 273, 178 P.2d 618 (1947).

amendment at trial. On March 31, 1980, plaintiff submitted to the trial court extensive proposed findings of fact and conclusions of law to be entered upon trial to be held on April 4, 1980, which findings disclosed Mamie's alleged incompetency in furtherance of plaintiff's asserted right to have a constructive trust imposed upon the tract of real property.

■ Amendments to pleadings are favored and the trial court should be liberal in their allowance.[4] Courts are liberal in permitting amendments to pleadings so long as such amendments are in furtherance of justice and do not substantially change the plaintiff's claim.[5] In *Cartwright v. Atlas Chemical Industries, Inc.,*[6] this Court said (p. 610): "The outer limit of (12 O.S.1981) § 317 is that the contemplated amendment may not change a claim or defense."

■ In the case before us, the proposed amendment did not change the nature of plaintiff's claim or cause of action to impose a constructive trust upon properties concerning which a fiduciary relationship existed. Mamie's alleged incompetency was in furtherance of plaintiff's cause of action, not in lieu of it. We therefore hold that the trial court committed error in not granting the at-trial amendment and in not considering the evidence of incompetency as it related to plaintiff's claimed right to have a constructive trust imposed upon the tract in question.

### III.  WAS THE ACTION BARRED BY THE RUNNING OF THE STATUTE OF LIMITATIONS?

We next consider the effect of the statute of limitations upon the correctness of the lower court's sustaining a demurrer to plaintiff's evidence.

■ With reference to the action against defendant in her capacity of administratrix of the estate of John Phillip Robertson, deceased, we hold the action was not timely brought and the demurrer to plaintiff's evidence was correctly sustained by the trial court. Plaintiff's claim against the estate was filed on May 19, 1978. Under 58 O.S. 1981, § 337, a claim not approved or rejected is deemed rejected by operation of law thirty days thereafter. Under 58 O.S.1981, § 339 an action on the claims must be filed within 45 days after a claim has been rejected. Here the suit was filed more than 45 days following the rejection of the claim and plaintiff's action is barred.[7]

■ An entirely different limitations question is presented by plaintiff's action against the defendant individually for the declaration of a trust upon the tract of land conveyed by Mamie. We have heretofore determined that she was incompetent in fact at the time she conveyed the real estate to her son. The undisputed evidence further establishes that her mental condition was unchanged thereafter, and on February 20, 1979, the district court judicially determined that she was incompetent and appointed plaintiff guardian of her person and estate.

We need not here determine the limitations statute applicable to a suit to impose a constructive trust under the circumstances here present for the reason that as against Mamie, the statute never commenced to run.

Title 12 O.S.1981, § 94 provides: "Any person entitled to bring an action for the recovery of real property, who may be under any legal disability when the cause of action accrues, may bring his action within two years after the disability is removed."

In *Roberts v. Stith,*[8] this Court held (Syllabus 1 by the Court):

4.  *Oklahoma City v. Lockert,* Okl., 484 P.2d 523 (1971); *Weston v. Acme Tool, Inc.,* Okl., 449 P.2d 887 (1969).

5.  *Booth v. Red Eagle Oil Co.,* Okl., 393 P.2d 871 (1965); *Smith v. Miller,* Okl., 366 P.2d 402 (1961).

6.  Okl., 623 P.2d 606 (1981). See also *Wagoner v. Saunier,* Okl., 627 P.2d 428 (431) (1981).

7.  *Haddock v. Williams,* Okl., 378 P.2d 774 (1963); *McLeod v. Palmer,* 189 Okl. 466, 117 P.2d 770 (1941); *Brogden v. Baugh,* 176 Okl. 339, 55 P.2d 994 (1936).

8.  Okl., 383 P.2d 14 (1963).

"In order for mental condition of grantor of real estate to render him 'under any legal disability,' as the phrase is used in 12 O.S.1961 § 94, relating to tolling of limitations in action to recover real estate, it must be shown that grantor's mental condition at time of conveyance was such that he did not understand the nature or legal effect of his act."

Here the evidence was the grantor/donor's mental capacity was such that she did not understand the nature or legal effect of her act at the time of the execution of the deed and power of attorney, and her condition remained unchanged to the time of the trial of this cause. Therefore, the statute of limitations never began to run.[9]

In the case before us, Mamie's son, John Phillip Robertson, was the grantee of a deed conveying her twenty-acre tract to him, which deed was voidable for legal disability of the grantor to make the conveyance. As we have seen, the son thereafter deeded the property to himself and to his wife, the defendant in joint tenancy, under the power of attorney from Mamie which she was incompetent to execute. Even if she were competent to execute the instruments, the deed from her son to himself and his wife, the defendant, was in clear violation of the terms under which the power of attorney were given and in clear breach of his fiduciary duty toward Mamie.

### IV. DOES THE DOCTRINE OF CONSTRUCTIVE TRUST APPLY?

This brings us to the question of whether the doctrine of constructive trust is applicable in favor of the plaintiff as the guardian of the person and estate of Mamie as against the title of the defendant as the surviving joint tenant of the tract in question.

In the case of *Richards v. Lowery,*[10] this Court said (336–337):

"It is the general rule that, where one obtains the legal title or right to property by actual fraud, undue influence, taking advantage of one's weakness, or necessities, or through any other similar circumstances, although not amounting to fraud, which renders it unconscientious for the holder of the legal title to retain it, and enjoy the beneficial interest, equity will impress a constructive trust on the property so acquired in favor of the person who is equitably entitled to the same. And in such cases equity has jurisdiction to reach the property in the hands of anyone except an innocent purchaser for value, who may take it relieved from the trust. (Citations omitted.) ... The principle is well settled that where one party has acquired the legal title to property to which another has the better right, a court of equity will convert him into a trustee of the true owner and compel him to convey the legal title."[11]

The defendant was not an innocent purchaser for value without notice so that it could be said she acquired ownership of the property free of the trust.

The evidence introduced at the trial below having been sufficient to withstand a demurrer to plaintiff's evidence, the ruling of the trial court is reversed and the cause remanded for further proceedings not inconsistent with the rulings herein made.

IRWIN, C.J., BARNES, V.C.J., and HODGES, OPALA and WILSON, JJ., concur.

SIMMS, DOOLIN and HARGRAVE, JJ., dissent.

---

9. *Lantis v. Davidson,* 60 Kan. 389, 56 P. 745 (1899).

10. 135 Okl. 243, 275 P. 335 (1929).

11. In accord, *Rollow v. Taylor,* 104 Okl. 275, 231 P. 224 (1924); *Goldsby v. Juricek,* Okl., 403 P.2d 454 (1965); *Cacy v. Cacy,* Okl., 619 P.2d 200 (1980); *Goodwin v. Beard,* Okl., 434 P.2d 192 (1967); *Preston v. Ross,* 201 Okl. 455, 207 P.2d 297 (1949); 76 Am.Jur.2d Trusts § 255.