**Jack Alvie CROSSMAN, a/k/a Jack Crossman a/k/a Al Crossman, Appellant,**

**v.**

**Virginia I. REEVES; Debbie Robertson; Frederick Robertson; J. Mike Stuart, Personal Representative of the Estate of Ben Rea, Ellis County District Court Case No. P–85–54; Mary Ellen Trego; William Lee Denney; Gladys Haynes; and the Unknown Successors of Ben Rea and Mary Rea, Deceased, Appellees.**

No. 70564.

Supreme Court of Oklahoma.

Feb. 4, 1992.

As Corrected Feb. 6 and 10, 1992.

W.R. Walton, Guthrie, for appellant.

Klem & Klem, M. Cecil Klem, Shattuck, for appellees, J. Mike Stuart and Gladys Haynes.

Mitchel, Gaston & Mitchel, Gary L. Mitchel, Woodward, for appellee, Virginia I. Reeves.

D. Fred Doak, Oklahoma City, for appellees, Debbie and Frederick Robertson.

DOOLIN, Justice.

Jack Alvie Crossman brought this action for specific performance of an oral life-care contract made with Ben and Mary Rea, now deceased. The trial court, after hearing Crossman's evidence, found that no life-care contract existed and sustained a demurrer in favor of the Robertsons. The Court of Appeals, noting that Crossman's evidence was uncontroverted, reversed the trial court's decision that no life-care contract existed. The appellate court remanded the cause with directions that the property of the Reas be distributed to Crossman. Having granted appellees' petitions for certiorari, we vacate the decision of the Court of Appeals, reverse the trial court's judgment, and remand the cause for further proceedings.

In 1939, Crossman began working for Ben and Mary Rea on their farm and ranch in Shattuck, Oklahoma. Crossman worked

for $40.00 a week plus room and board until he enlisted in the Army during World War II. Upon his discharge Crossman returned to Shattuck to visit Ben and Mary Rea. During this time, Crossman asserts that the Reas asked him if he would live with them, work for them without pay, never leave and never marry, then the Reas' estate would be his after their deaths. Crossman performed his promise for the next forty years, and the Reas treated him as their son. As a family member of the Reas' household, Crossman contributed his Army disability pay to assist in running the farm and ranch. Witnesses from the community testified at trial that the Reas treated Crossman as their son, and some members of the community believed that Crossman had been adopted by the Reas. Ben and Mary Rea were heard to remark that upon their deaths, their property would go to Crossman.

However, Ben and Mary Rea died intestate, Mary in 1983, and Ben in 1985. The Reas' real property was in Mary Rea's name, and when she died Ben acquired title to the property. Mary Rea acted as an agent for Ben in that she conducted the majority of the family business for the couple. During the final years of his life, Ben suffered a stroke and was depressed over the loss of his wife. Although two wills were drafted for Ben, he did not sign either of them.

In the weeks preceding his death, Ben allegedly conveyed 199 acres of the real property. Sixty acres were sold to petitioners Debbie and Buddy Robertson for $216.00 per acre, and 139 acres were sold to petitioner Virginia Reeves for $70.00 an acre. Eleven days prior to his death, Ben signed a deed to the Robertsons for their tract of land, however, the Robertsons made only one note payment. The Reeves' contract with Ben does not describe any particular property, and nothing was actually paid for the land.

Crossman, seeking specific performance of the life-care contract in a quiet title action, contested the conveyances to the Reeves and Robertsons, saying the sales should be set aside, and he sought an accounting of the Reas' estate. The trial court sustained the Robertsons' demurrer to Crossman's evidence of a life-care contract, even though the court found it was "amply supported by the testimony of numerous friends and neighbors." In determining that no life-care contract existed, the trial court placed great emphasis on the fact that Ben Rea did not execute an effective will devising his real property to Crossman. Acting as a court of equity, the trial court further reformed the contract between Ben and Reeves to reflect the correct legal description of the land sold to Reeves.

The Court of Appeals, relying upon *Holt v. Alexander*, 207 Okl. 140, 248 P.2d 228 (1952), reversed the decision of the trial court that no life care contract existed between Crossman and the Reas. In *Holt*, 248 P.2d at 230, this Court held:

Before a court of equity will specifically enforce an oral contract to devise property, the proof of the contract must be so cogent, clear, and forcible as to leave no reasonable doubt as to its terms and character. *Pancoast v. Eldridge*, 134 Okl. 247, 273 P. 255.

The Court of Appeals applied this rule of law to the facts in the instant case, and concluded that the trial court's finding of no life-care contract was against the clear weight of the evidence.

The appellate court observed that the undisputed evidence of the life-care contract between Crossman and the Reas was supported by the parties' behavior, reasonable inferences drawn therefrom, and by the testimony of witnesses who had known the Reas. Since Crossman had paid consideration by fully performing his part of the uncontroverted life-care contract, the appellate court held that Crossman's claim was not subject to the statute of frauds, and that Ben Rea's failure to make a will did not contradict the existence of a life care contract. *Holt*, 248 P.2d at 230.

In reversing the order of the trial court, the Court of Appeals weighed the evidence

presented by Crossman, and rendered the judgment the appellate court reasoned the trial court should have rendered. First, the appellate court held that upon Mary's death, Crossman became a beneficial interest holder in Mary's estate, and Ben became a trustee or fiduciary holder of that property for Crossman's benefit. *See, Superior Oil Corporation v. Wilson,* 187 Okl. 447, 103 P.2d 535 (1940), *Renegar v. Bruning,* 190 Okl. 340, 123 P.2d 686 (1942), and *Robertson v. Robertson,* 654 P.2d 600 (Okla.1982).

Second, although Ben had the right to sell the properties, the Court of Appeals reasoned that he also had a fiduciary duty to use the utmost good faith and due care to obtain at least a reasonable price for the land; vis, to follow the "prudent man rule". 60 O.S. § 161 (1981); *In Re: Flynn's Estate,* 205 Okl. 311, 237 P.2d 903 (1951). The Court of Appeals found that Ben unconscionably breached his fiduciary duty because of the inadequacy of consideration paid by the Robertsons and Reeves. Citing 60 O.S. § 137 (1981), *Cacy v. Cacy,* 619 P.2d 200 (Okla.1980), and *Robertson, supra,* to support its imposition of a constructive trust, which resulted from the conveyances made by Ben to the Reeves and Robertsons, the appellate court implicitly observed that ninety-year-old Ben Rea lacked mental capacity to make the conveyances and that the Robertsons and Reeves exercised undue influence on Ben.

The Court of Appeals concluded that Crossman was entitled to specific performance of the life-care contract, and remanded the case to the trial court with directions that Reeves and the Robertsons reconvey their properties to the personal representative of Ben's estate for distribution to Crossman as the rightful beneficiary owner. The lone dissenter concurred in the appellate court's finding that the trial court erred in refusing to grant specific performance of the life-care contract. However, the dissent disagreed with the majority by concluding that the land transactions made to the Robertsons and Reeves were valid.

In their petitions for certiorari, the Robertsons, Reeves and the personal representative of the Ben Rea estate present similar arguments to show that the Court of Appeals' unpublished opinion should be vacated and the trial court's judgment reinstated and affirmed. We agree with the former contention, but we reject the latter. The significant error committed at the appellate stage of this litigation requires that we vacate the Court of Appeals' decisions. Thus, we find it unnecessary to address all the other arguments presented on certiorari.

Our review of this case must be guided by our opinion in *Malnar v. Whitfield,* 708 P.2d 1093, 1095 (Okla.1985). In *Malnar,* we quoted the case of *Snow v. Winn,* 607 P.2d 678 (Okla.1980) in reviewing the ruling case law for a demurrer to the evidence:

> A demurrer to the evidence of plaintiff will be treated as a motion for judgment for the defendant. Thus, the court shall weigh the evidence and render judgment if the evidence of the plaintiff is insufficient for judgment in his favor. This is so because there is no logical reason to require the defendant to put on his evidence in defense of a cause of action not proved to contain a prima facie case. However, **if the order sustaining the demurrer to the evidence in an equity action is reversed** on appeal as against the clear weight of the evidence, then **the defendant must be afforded an opportunity to present his evidence....**, the **general rule that in an equitable action the appellate court will render the judgment the trial court should have rendered is not operative inasmuch as the defendant has yet to put his evidence before the court.** [emphasis added].

Our review of the evidence the testimony presented below supports the Court of Appeals' conclusion that the trial court erred in sustaining the Robertsons' demurrer to the evidence presented by Crossman. The lower court's findings were clearly erroneous and must be reversed. The testi-

mony of witnesses on Crossman's behalf sufficiently established, as did the evidence presented in *Holt*, that decedents Mary and Ben Rea orally agreed that their property should pass to Crossman upon their deaths. In passing we note, as did the appellate court, that the trial court found that Crossman's testimony of a life-care contract was "amply supported by the testimony of numerous friends and neighbors as to what those friends and neighbors perceived that Mrs. Rea had indicated, and that Mr. Rea acknowledged or indicated to some."

We also approve of the Court of Appeals' reasoning that the statute of frauds is not operative. *Holt*, 248 P.2d at 230. Unfortunately, the Court of Appeals rendered final judgment on matters which were not adjudicated by the trial court. Since we do not understand this to be the law in an equity action, the Robertsons, although unsuccessful in penetrating the existence of the life-care contract, must be afforded an opportunity to present their evidence in the trial court. *Snow v. Winn, supra.*

The appellate court was correct in reversing the trial court's sustaining of the Robertsons' demurrer, and reformation of the land contract between Ben and Reeves. However, we believe that in this equitable action other issues of fact are not so conclusive to warrant and support the final judgment rendered by the appellate court inasmuch as the defendants have not been afforded an opportunity to present their evidence. In the present case, material facts concerning the conveyances made to the Robertsons and Reeves have not been fully developed; for example, whether Ben Rea was competent to make the land transactions or was subject to undue influence is disputed. Under all the circumstances, we have no hesitancy in holding that remaining issues must be resolved by the trial court including whether a decree of specific performance should be granted to the life-care contract.

Having decided that Crossman established a life-care contract between himself and the Reas, and that Crossman performed the terms of the oral contract, on remand the trial court, as we held in *Holt*, 248 P.2d at 231:

> ... will grant relief, provided the case is free from objection on the ground of inadequacy of consideration and there are no circumstances or conditions which render the claim inequitable.

Opinion of the Court of Appeals VACATED; Judgment of the district court REVERSED; and cause is REMANDED for further proceedings not inconsistent with the views expressed herein.

All Justices concur.